(No. 48178.

PAUL BRADLEY *et al.*, Appellees, v. FRANKLIN J. LUNDING, JR., *et al.*, Appellants.

*Announced January 19, 1976.—Opinion filed March 18, 1976.*

Michael Levinson, Franklin J. Lunding, Jr., and Michael E. Lavelle, all of Chicago, for appellants Franklin J. Lunding *et al.*

John E. Cassidy, Jr., of Cassidy, Cassidy & Mueller, of Peoria, for appellants John A. McElligott *et al.*

Charles J. Gramlich, of Pefferle, Maddox & Gramlich, of Springfield, and Melvin B. Lewis, of Chicago, for appellees.

Jayne W. Barnard and Michael Kreloff, both of Chicago (William H. Luking, of counsel), for *amici curiae* Jayne W. Barnard *et al.*

Thomas F. Londrigan, of Londrigan & Potter, of Springfield, and Brian B. Duff, of Chicago, for *amici curiae* Brian B. Duff, *et al.*

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The circuit court in Sangamon County held unconstitutional a regulation of the State Board of Elections

dealing with the order in which the names of candidates are to be arranged upon the primary ballot, and directed that the ballot positions of the candidates be determined instead in a manner prescribed by the court. The appeal from this order was transferred to this court pursuant to Rule 302(b). An accelerated briefing schedule was fixed, and at the conclusion of oral argument the judgment of the circuit court was reversed. This opinion explains the reasons for that determination.

Sections 7—12 and 7—14 of the Election Code direct the Board to certify to the county clerks the list of candidates for nomination for elective offices by established political parties at primary elections. Certification consists of listing the candidates and the order in which the offices and the candidates for each office are to appear on the primary ballot. Section 7—12(6) provides:

> "*** Petitions filed by mail and received after midnight and on hand upon the opening of the office involved, shall be deemed as filed as of 8:00 a.m. of that day or as of the normal opening hour of such day, as the case may be, and all petitions received thereafter shall be deemed as filed in the order of actual receipt. Where 2 or more petitions are received simultaneously, the State Board of Elections or the various clerks with whom such petitions are filed shall break ties and determine the order of filing, and such determination shall be conclusive." Ill. Rev. Stat., ch. 46, par. 7—12.

Section 7—14 requires the Board to certify the candidates for each office in the order in which nominating petitions were filed. It provides:

> "The State Board of Elections shall, in its certificate to the county clerk, certify the names of the offices, and the names of the candidates in the order in which the offices and names (except the names of candidates for State offices), shall appear upon the primary ballot; such names (except the names of candidates for State offices), to appear in the order in which petitions have been filed in the office of the State Board of Elections except as otherwise provided in this Article." (Ill. Rev. Stat., ch. 46, par. 7—14.)

The exceptions relate to the nomination of candidates whose ballot positions are rotated throughout the State by legislative districts.

The challenged regulation of the Board prescribes a lottery system to determine the order in which simultaneously filed petitions are deemed to have been filed. The circumstances that gave rise to this regulation are described in *Huff v. State Board of Elections* (1974), 57 Ill.2d 74. The regulation provides:

> "The lottery system to be used to break ties resulting from the simultaneous filing with the State Board of Elections of petitions for the same office shall be as follows:
>
> 1. The names of all candidates who filed simultaneously for the same office shall be listed alphabetically and shall be numbered consecutively commencing with the number one which shall be assigned to the candidate whose name is listed first on the alphabetical list; provided, however, that candidates filing a group petition for the same office shall be treated as one in the alphabetical listing using the name of the first candidate for such office to appear on the petitions as the name to be included in the alphabetical list. ***
>
>                 * * *
>
> 4. All candidates shall be certified in the order in which petitions have been filed with the State Board of Elections. In cases where candidates have filed simultaneously, they shall be certified (in the order determined by the lottery procedure outlined above) prior to candidates who filed for the same office who filed their petitions at a later time, except in those situations where the law requires rotation on a district-by-district basis."

The complaint is in two counts. The plaintiffs in count I are seven candidates, each of whom, at 8 a.m. on the first day of filing, filed an individual nominating petition for the Democratic nomination for the office of judge of the circuit court, Cook County judicial circuit, to fill additional judgeships elected countywide. Fifteen candidates are to be nominated for this office, and the 15 who receive the highest number of votes will be nomi-

nated. Individual nominating petitions were also filed by ten other candidates at 8 a.m. Two "group petitions" were also filed at 8 a.m. One contained the names of two candidates, and the other contained the names of 15 candidates. Other candidates filed nominating petitions for this office after 8 a.m. on the first day of filing.

The plaintiffs in count II are two candidates, each of whom, at 8 a.m. on the first day of filing, filed an individual nominating petition for the Democratic nomination for the office of judge of the circuit court for the Cook County judicial circuit to fill additional judgeships to be elected by voters inside the city of Chicago. Ten candidates are to be nominated for this office, and the ten who receive the highest number of votes will be nominated. Individual petitions were also filed by two other candidates at 8 a.m. A "group petition" which contained the names of ten candidates was also filed at 8 a.m. Other candidates filed nominating petitions after 8 a.m. on the first day of filing.

The defendants are the members of the State Board of Elections. The 15 group candidates in count I and the 10 group candidates in count II sought and were granted leave in the trial court to intervene as defendants. With the exception of the two candidates in count I who had filed a group petition, none of the other candidates involved in these contests was notified of the action or made a party to it. Petitions seeking leave to intervene were filed in this court, but because of the sharply curtailed schedule which was required in order to allow time to certify candidates and print ballots, no petition for leave to intervene in this court was allowed, although any who sought leave to intervene were permitted to file briefs as *amicus curiae*.

The trial court heard evidence and entered the following order:

"1. That a lottery be conducted to break the tie for first place among those individuals filing simultaneously.

2. That those persons whose names appear on a

group petition be permitted to remain together in a group on the ballot provided that their petition shall be deemed to have been filed after the individual petitioners and provided further that any person whose name appears on a group petition may withdraw his name from the petition and join in the lottery as an individual to be conducted for the purpose of determining the respective ballot positions, and provided further that in the race wherein two group petitions have been filed simultaneously, that a separate lottery be conducted for the purpose of determining which group petition shall appear before the other.

The effect of this decision is limited to those persons who have joined in this law suit."

The order was stayed pending appeal.

Two of the *amicus* briefs related to candidates for judicial office in Cook County. It is not clear from one of them, filed in the form of suggestions in support of a petition for leave to intervene in this court, just what office or offices are involved. The suggestions express the view, however, that the order of the trial judge was correct insofar as it denied the right of candidates who had filed group petitions to participate in the lottery unless they abandoned their right to appear as a group on the ballot, but incorrect insofar as it permitted those candidates to appear as a group on the ballot if they forfeited their right to participate with other candidates in the lottery. This is the position asserted by the plaintiffs. The other *amicus* brief was filed on behalf of five candidates who had filed a group petition for the Republican nomination for the office of judge of the circuit court of Cook County to fill the five additional judgeships outside the city of Chicago. It supports the position of the defendants and the intervenors, who assert that the regulation is consistent with the statute, properly recognizes the right of association of group petitioners and does not arbitrarily discriminate against anyone.

Two competing considerations have been emphasized by the parties, and they are reflected in the trial court's

order. One is the right of each candidate not to be discriminated against in the allotment of the ballot positions. This is the right that was involved in *Huff v. State Board of Elections* (1974), 57 Ill.2d 74, and the cases cited therein. The other is the right of candidates to join as a group in filing nominating petitions and to retain their group identity upon the ballot. Section 7—10 of the Election Code clearly contemplates the filing of nominating petitions which contain the names of more than one candidate when several vacancies exist in the same office, and section 7—14 requires that the names of candidates appear on the ballot in the order in which petitions were filed.

The trial court apparently felt that these two rights were incompatible. Concentrating upon count II, the trial judge found that a drawing conducted under the regulation would actually improve the chance of each of the individual plaintiffs involved in that count to obtain first, second, or third place on the ballot, but that upon the particular facts involved in that count, the chance of such a candidate to obtain fourth place was less than it would be if the group petition was disregarded. For that reason he ruled that the group petitioners forfeit their right to participate in the lottery unless they gave up their right to appear as a group on the ballot. It seems obvious, however, that the result of the application of the challenged regulation with respect to any particular office will always depend upon the number of vacancies to be filled, the number of candidates who file individual petitions and the number who join in group petitions. The regulation was necessarily drawn in advance of the filing of any petitions, and purposeful discrimination can not be charged. Its validity can not be made to depend upon the number of candidates and the way in which they file their nominating petitions for vacancies in a particular office. Moreover, as the trial judge pointed out, "there can be no convincing, scientific or empirical evidence of the effect of ballot

placement on the vote a candidate receives," and "[t]he argument that first place is the only position of value may very well be true."

The real targets of the plaintiffs' attack are the statutory provisions that grant the right to file a group petition and provide that ballot positions shall be determined by the time of filing petitions. It is apparently the fear that group candidates may be recognized as such that prompted the filing of the complaint. In the trial court the plaintiffs argued that the regulation "reflects a policy of intentional and purposeful discrimination against the individuals because the group which was endorsed by the Democratic Central Committee is thereby identifiable on the ballot ***." And it is apparently for this reason that the plaintiffs argue in this court that the trial judge's order was erroneous insofar as it permitted the intervening defendants to remain upon the ballot as a group in any position.

There is present in this case a third consideration which seems to have been largely overlooked. That consideration is the interest of the voter in being able to identify readily and accurately, inside the voting booth, those candidates for whom he wishes to vote. The General Assembly apparently had this third consideration in mind in permitting the association of candidates upon group nominating petitions and in providing that ballot position be determined on the basis of nominating petitions rather than candidates.

For the reasons stated, we concluded that the plaintiffs had failed to establish that any constitutional or statutory right of theirs was invaded by the regulation of the State Board of Elections, and the judgment of the circuit court in Sangamon County was reversed.

*Judgment reversed.*