(No. 49358.—

CHARLES N. ANDERSON *et al.,* Appellants, v. JOSEPH SCHNEIDER *et al.,* Appellees.

*Announced March 21,1977.—Opinion filed June 1, 1977.*

MORAN, J., took no part.

WARD, C.J., and GOLDENHERSH, J., dissenting.

Michael Kreloff and Franklin S. Schwerin, of Chicago, for appellants.

Andrew M. Raucci, of Chicago, for appellee Louis I. Lang.

MR. JUSTICE DOOLEY delivered the opinion of the court:

This is an election case wherein a new political party and its candidates for public office were removed from the ballot by a township electoral board, whose decision was affirmed by the circuit court of Cook County.

Plaintiffs, Charles N. Anderson, Edmund H. Kaufman, Arnold Abrams, Eleanor Flicht, Don R. Copeland, Carl L. Gubitz, Erna I. Gans, and Edward L. "Spike" McGrath, filed a petition in the circuit court of Cook County against defendants, Joseph Schneider, James A. Geroulis, and Earl H. Numrich, the members of the Niles Township Officers Electoral Board, seeking reversal of an order that plaintiffs' names not be printed on the ballot in a township election set for April 5, 1977. Louis L. Lang, upon whose objection the board's order was entered, was also made a defendant.

The circuit court of Cook County denied the petition, and plaintiffs prosecuted an expedited appeal to this court. On March 21, following oral argument, we reversed the judgment of the circuit court, and directed that plaintiffs' names appear on the ballot for the April 5, 1977, election, with our opinion to follow.

On January 31, 1977, plaintiffs filed their nomination papers with the township clerk, seeking to form a new political party called the Independent Township Caucus Party, pursuant to section 10–2 of the Election Code (Ill. Rev. Stat. 1975, ch. 46, par. 10–2). Plaintiffs proposed to run under that party label for the eight township offices to be filled at the April 5, 1977, election.

Section 10–2 is part of article 10 of the Election Code, which deals with the nomination of independent candidates and candidates of minor political parties for both State and local offices. The section provides in pertinent part as follows:

> "[A]ny *** group of persons hereafter desiring to form a new political party in any municipality or district less than a county shall file such petition with the clerk or Board of Election Commissioners of such municipality or district as the case may be. Any such petition *** shall declare as concisely as may be the intention of the signers thereof to form such new political party *** in such district or political subdivision; shall state in not more than 5 words the name of such new political party; *shall contain a complete list of candidates of such party for all offices to be filled in *** such district or political subdivision as the case may be, at the next ensuing election* then to be held ***." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 46, par. 10–2.

The italicized portion of section 10–2 also applies to nominations for statewide offices. Plaintiff Carl L. Gubitz, a nominee for the office of township trustee, was ineligible, since he had not been a resident of the township for one year as required by statute. (Ill. Rev. Stat. 1975, ch. 139, par. 83.) The board agreed that Gubitz was

ineligible, and it directed that his name not appear on the ballot. The parties have stipulated that Gubitz had not been a resident for one year, and the board's action with respect to him is not challenged. Plaintiffs also expressly disclaim any contention that the durational residency requirement is unconstitutional.

The board's order, however, directed that the name of the Independent Township Caucus Party and the names of the party's seven other candidates also be removed from the ballot. That order was based on the proposition that with Gubitz being disqualified, the petition to form a new party did not comply with the requirement of section 10—2 that the nomination papers contain a complete list of candidates for all offices to be filled. Plaintiffs contend that such a construction of section 10—2 is improper as a matter of statutory construction. Plaintiffs further urge that the conduct of the board and the circuit court is violative of the due process and equal protection clauses of the Federal and State constitutions.

Section 10—2 could well be construed as requiring no more than that a new political party disclose the names of the candidates for each office whom it plans to run, a requirement which would serve to obviate the possibility that a candidate might also run as an independent or as the candidate of some other party, a practice forbidden by section 10—7 of the Code (Ill. Rev. Stat. 1975, ch. 46, par. 10—7). (See *People ex rel. Schnackenberg v. Czarnecki* (1912), 256 Ill. 320; *People ex rel. McCormick v. Czarnecki* (1914), 266 Ill. 372.) Defendants contend, however, that section 10—2 requires any new political party to run a full slate, with one candidate nominated for every office which is to be filled. The present case makes manifest the difficulties such a construction of this statute would entail.

Plaintiffs assert, and defendants do not deny, that it was neither charged nor proved that any of them was

aware of Gubitz's failure to meet the durational residence requirement. Plaintiffs also point out that Gubitz's statement of candidacy, circulated with the nominating petition, contained nothing on its face which would disclose his ineligibility. On the contrary, the statement represented that he was eligible. The consequence of defendant's position is to place upon each candidate the burden of verifying the continued residency, and other requirements of eligibility, for every other candidate. The imposition of that burden is not reasonable. Since what constitutes a person's place of residence turns in part upon his intention (see *Stein v. Country Board of School Trustees* (1968), 40 Ill. 2d 477), the task is, at best, a difficult one. In the case of a statewide election, likewise controlled by section 10–2, it would be impossible. Under the circuit court order, one ineligible candidate would cause the entire slate to fall.

May the electoral board strike from the ballot the name of the Independent Township Caucus Party, as well as that of seven of its candidates, because the eighth candidate has not fulfilled the statutory residence requirement? The sanction imposed by the electoral board and the circuit court was a harsh one. It affects not only the rights of the candidates but those of the voters. Nor have the defendants suggested any reason why such a sanction is necessary to protect the integrity of the electoral process.

It is now well recognized that the power of the States in determining voter qualifications and the conduct of elections must be exercised in a manner consistent with the equal protection and due process clauses of the fourteenth amendment and with the interrelated right to associate for political purposes which is guaranteed by the first amendment. *Williams v. Rhodes* (1968), 393 U.S. 23, 21 L. Ed. 2d 24, 89 S. Ct. 5; *Evans v. Cornman* (1970), 398 U.S. 419, 26 L. Ed. 2d 370, 90 S. Ct. 1752; *Bullock v. Carter* (1972), 405 U.S. 134, 31 L. Ed. 2d 92, 92 S. Ct.

849; *Lubin v. Panish* (1974), 415 U.S. 709, 39 L. Ed. 2d 702, 94 S. Ct. 1315; *Storer v. Brown* (1974), 415 U.S. 724, 39 L. Ed. 2d 714, 94 S. Ct. 1274; *McCarthy v. Briscoe* (1976), 429 U.S. 1316, 50 L. Ed. 2d 49, 97 S. Ct. 10; *Communist Party v. State Board of Elections* (7th Cir. 1975), 518 F.2d 517.

It is obvious that voting is a fundamental right in our system of government. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders* (1964), 376 U.S. 1, 17, 11 L. Ed. 2d 481, 492, 84 S. Ct. 526, 535.

The importance of the electoral process in American life is demonstrated by the fact that since 1791 no less than eight amendments to the Federal Constitution (amends. XII, XV, XVII, XIX, XXII, XXIII, XXIV, XXVI) are concerned with voting rights and electoral procedures. The following remarks in The Federalist are pertinent:

> *"First.* As it is essential to liberty that the government in general should have a common interest with the people, \*\*\* [it] should have an immediate dependence on, and an intimate sympathy with, the people. Frequent elections are unquestionably the only policy by which this dependence and sympathy can be effectually secured." 1 The Federalist No. 52, at 360 (1901) (A. Hamilton or J. Madison).

Such political rights as voting come within the ambit of the equal protection clause. "It has been established in recent years that the Equal Protection Clause confers the substantive right to participate on an equal basis with other qualified voters whenever the State has adopted an electoral process for determining who will represent any segment of the State's population." *San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 59 n.2, 36 L. Ed. 2d 16, 58 n.2, 93 S. Ct. 1278, 1310 n.2 (Stewart, J., concurring), quoted in *Lubin v. Panish*

(1974), 415 U.S. 709, 713, 39 L. Ed. 2d 702, 707, 94 S. Ct. 1315, 1318.

In a series of recent decisions the United States Supreme Court has limited the extent to which a State may constitutionally restrict access to the ballot by a minority party and by independent candidates. *Williams v. Rhodes* (1968), 393 U.S. 23, 32, 21 L. Ed. 2d 24, 32, 89 S. Ct. 5, 11; *Bullock v. Carter* (1972), 405 U.S. 134, 143-44, 31 L. Ed. 2d 92, 99-100, 92 S. Ct. 849, 855-56; *Lubin v. Panish* (1974), 415 U.S. 709, 716, 39 L. Ed. 2d 702, 708-09, 94 S. Ct. 1315, 1320.

We have been repeatedly told that undue burdens cannot be constitutionally imposed upon independent candidates or parties without some justifiable State interest. In *Storer v. Brown* (1974), 415 U.S. 724, 746, 39 L. Ed. 2d 714, 732, 94 S. Ct. 1274, 1287, the United States Supreme Court, in holding California imposed an unconstitutional restriction on access to the ballot by independent candidates for the offices of President and Vice President, observed:

"*** No discernible state interest justified the burdensome and complicated regulations that in effect made impractical any alternative to the major parties. Similarly, here, we perceive no sufficient state interest in conditioning ballot position for an independent candidate on his forming a new political party as long as the State is free to assure itself that the candidate is a serious contender, truly independent, and with a satisfactory level of community support."

Obviously, "[n]o discernible state interest" exists for denying the rights of seven candidates to associate for a political party, and those of the voters, because the eighth candidate has not been a resident of the township for one year.

It is true the rights directly involved here are those of

the candidates for office. But the rights of candidates and those of voters "do not lend themselves to neat separation"; each statute affecting a candidate has some effect on the voter. (*Bullock v. Carter* (1972), 405 U.S. 134, 143, 31 L. Ed. 2d 92, 99, 92 S. Ct. 849, 856.) That the process of denying a candidate a place on the ballot because of the ineligibility of other candidates is constitutionally vulnerable is particularly manifest from *Lubin v. Panish* (1974), 415 U.S. 709, 39 L. Ed. 2d 702, 94 S. Ct. 1315. There the United States Supreme Court struck down a California statute requiring the payment of a filing fee in order to be placed upon the ballot in the primary election for nomination for county supervisor. The court held that the statute deprived the potential candidate, who was an indigent person, of his rights under the equal protection clause of the fourteenth amendment in the absence of an alternative means of access to the ballot. It should be noted in passing that the California Superior Court, the California Court of Appeals, and the California Supreme Court had each successively denied the petition for writ of *mandamus.* That petition stated under oath that the candidate had no assets and could not pay the filing fee of $701.60. The same claim, the court noted, could be made under the circumstances "whether the filing fee had been fixed at $1, $100 or $700." (415 U.S. 709, 714, 39 L. Ed. 2d 702, 707, 94 S. Ct. 1315, 1319.)

The State's position was that the statutory fee was necessary to keep the ballot from being crowded by frivolous candidates. The Supreme Court stated:

"This legitimate state interest, however, must be achieved by a means that does not unfairly or unnecessarily burden either a minority party's or an individual candidate's equally important interest in the continued availability of political opportunity. *The interests involved are not merely those of parties or individual candidates;*

*the voters can assert their preferences only through candidates or parties or both and it is this broad interest that must be weighed in the balance. The right of a party or an individual to a place on a ballot is entitled to protection and is intertwined with the rights of voters.*

'[T]he right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot.' *Williams v. Rhodes,* 393 U.S. 23, 31 (1968).

This must also mean that the right to vote is 'heavily burdened' if that vote may be cast only for one of two candidates in a primary election at a time when other candidates are clamoring for a place on the ballot. It is to be expected that a voter hopes to find on the ballot a candidate who comes near to reflecting his policy preferences on contemporary issues." (Emphasis supplied.) 415 U.S. 709, 716, 39 L. Ed. 2d 702, 708-09, 94 S. Ct. 1315, 1320.

Certainly the right to vote is "heavily burdened" if an entire party and its candidates are removed from the ballot because an eighth candidate has not satisfied the residence requirement. Here the "broad interest[s]" to be weighed in the balance are the rights of the party, the candidate, and the voter. Certainly there is no interest necessary to preserve the integrity of the ballot justifying the removal of the party and all its candidates from the ballot because of want of eligibility of a single candidate. The conduct of the electoral board and that of the circuit court deprived the voters of the right to assert their preferences for the candidates of their party notwithstanding that all statutory requirements for the placing of such a party on the ballot had been fulfilled.

We must be conscious of the broad interest which is to

be served, namely, the rights of individual candidates to avail themselves of political opportunity and those of the voters to be given the opportunity to exercise an effective choice. The basis upon which the party and the candidate were removed from the ballot in this instance was a violation of the first amendment and of the equal protection clauses of both the State and Federal constitutions.

Section 10—2 contains no language authorizing the board to remove qualified candidates because a candidate for another office is found to be ineligible. As previously noted, defendants deduce that power from the requirement that a new political party run a complete slate. In keeping with our obligation to construe legislative enactments so as to sustain their constitutionality where such construction is a reasonable alternative (*Board of Education v. Ellis* (1975), 60 Ill. 2d 413, 416; *People v. Nastasio* (1960), 19 Ill. 2d 524, 529), we hold section 10—2 confers no authority for the removal of all of the candidates because one is unqualified.

We also consider that the action of the board approved by the circuit court violated due process.

A similar situation arose in *Briscoe v. Kusper* (7th Cir. 1970), 435 F.2d 1046, also involving nomination procedures, and decided prior to *Lubin.* There the Board of Election Commissioners of the city of Chicago kept several independent candidates for alderman off the ballot because the names of some nominators appeared on more than one nominating petition. The board based its action on a section of the Election Code which stated that "each voter may subscribe to one nomination for each office to be filled, and no more" (Ill. Rev. Stat. 1969, ch. 46, par. 10—3). (435 F.2d 1046, 1054.) The board held that compliance with this provision was mandatory, although in prior years the board had held that this provision was directory only, and that its violation did not affect the

validity of a nominating petition.

The court at first rejected an equal protection attack on the board's action since the board had not been shown to have discriminated on the basis of race, geographical location, poverty, political beliefs, or party affiliations. (435 F.2d 1046, 1052.) But the court then went on to hold that freedom of association, including access to election ballots, was protected under the due process clause. (See 435 F.2d 1046, 1053-54.) *Briscoe* thus foreshadows the later decisions of the Supreme Court in *Bullock* and *Lubin*. In *Bullock* the court stated that any practice having an adverse impact on the right to vote must be closely scrutinized, and must be "found reasonably necessary to the accomplishment of legitimate state objectives in order to pass constitutional muster." (405 U.S. 134, 144, 31 L. Ed. 2d 92, 100, 92 S. Ct. 849, 856.) And in *Lubin* the court said: "The right of a party or an individual to a place on the ballot is entitled to protection and is intertwined with the rights of voters." 415 U.S. 709, 716, 39 L. Ed. 2d 702, 708, 94 S. Ct. 1315, 1320.

The court of appeals in *Briscoe* also held that the action of the board violated procedural due process. Since the statute in question did not itself give notice that duplication of signatures would invalidate a nominating petition, the board could not so construe the statute without advance warning to prospective candidates. The court stated:

"Regardless of whether the more restrictive position of the Board was statutorily or constitutionally valid, the application of the new anti-duplication rule to nullify previously acceptable signatures without prior notice was unfair and violated due process. In this instance, the former interpretation of Section 10—3 was not only reasonable, but it also represented the application

of the statute least limiting to political association. An agency may be bound by its own established custom and practice as well as by its formal regulations. The Board may not deviate from such prior rules of decision on the applicability of a fundamental directive without announcing in advance its change in policy. This is especially true where, as here, fundamental, constitutionally protected liberties are adversely affected, and those interested require certain knowledge of what is expected of them by the state. Until such time as the Board makes public its new determination, it is constitutionally prohibited from imposing that rule on unsuspecting persons." (435 F.2d 1046, 1055.)

So here the candidates had no reason to believe the board would construe the statute in question to read "a complete list of *eligible* candidates" when the General Assembly, in its rational and constitutional prerogative, used the term "a complete list of candidates." Our task in construing a statute is a narrow one. Whatever the interstices of the legislative process may be, our obligation is to give expression to the intent of the legislature. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 542; *Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 553; *Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 83.) More than that, it is, whenever possible, to give the product of the General Assembly a constitutional meaning. (*Board of Education v. Ellis* (1975), 60 Ill. 2d 413, 416; *People v. Nastasio* (1960), 19 Ill. 2d 524, 529.) Here the construction placed upon the statute by both the electoral board and the circuit court of Cook County falls short of simple due process.

Following the decision by the electoral officers board, plaintiffs attempted to file a certificate of nomination to fill what they contend were vacancies caused by the

removal of plaintiffs from the ballot. Defendants contest the effectiveness of that action, but in view of our decision we need not pass upon that issue.

Mr. Justice Goldenhersh's dissent urges that the statute requires a complete list of candidates and that the opinion of the court does not attack such a requisite. Here there was a complete list of candidates, but only one was ineligible. The General Assembly, contrary to the positions of both dissents, did not exact that there be a complete list of eligible candidates, but only a complete list of candidates.

Mr. Justice Goldenhersh states that we are not required to decide "whether the individual petitioners were entitled to remain on the ballot as independent candidates," and that the discussion on the constitutional issues was unnecessary. The fact is, however, that the township electoral board ordered that the names of all candidates be not printed on the ballot. This conduct was affirmed by the circuit court. Such necessitated a discussion of the effect on the constitutional rights, not only of the petitioners, but also those of the electorate.

The judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*

MR. JUSTICE MORAN took no part in the consideration or decision of this case.

MR. CHIEF JUSTICE WARD, dissenting:

I would add only this comment to Justice Goldenhersh's persuasive dissent. The majority acknowledges that a court must give effect to what the legislature intended, but then remarkably (to me) it ignores plain language and says we should read "a complete list of candidates" as "a list of candidates." This of course has the effect of rewriting the sentence, and it nullifies the legislature's specification ("*** a complete list").

MR. JUSTICE GOLDENHERSH, with whom MR. CHIEF JUSTICE WARD joins, dissenting:

Mr. Chief Justice Ward and I dissent, and would affirm the judgment of the circuit court. In our opinion the majority has ignored the explicit language and misconstrued the intent and purpose of section 10—2 of the Election Code (Ill. Rev. Stat. 1975, ch. 46, par. 10—2).

The Election Code (Ill. Rev. Stat. 1975, ch. 46, par. 1—1 *et seq.*) provides a comprehensive scheme both for the nomination of candidates by political parties and independent candidates. Insofar as is pertinent here, section 7—2 of the Code (Ill. Rev. Stat. 1975, ch. 46, par. 7—2) provides that a political party is one which, at the election for town officers next preceding the primary, cast more than five percent of the entire vote cast in the town. Article 10 (Ill. Rev. Stat. 1975, ch. 46, par. 10—1 *et seq.*) provides the manner of making nominations by a "new political party," that is, one which has not qualified by receiving more than five percent of the entire vote cast within the township in the election next preceding the primary. If it casts the required five percent of the entire vote, the "new political party" becomes an "established political party" and thereafter the nomination of its candidates is governed by the provisions of article 7 (Ill. Rev. Stat. 1975, ch. 46, par. 7—1 *et seq.*). Section 10—3 of the Code (Ill. Rev. Stat. 1975, ch. 46, par. 10—3) provides for the method of nominating independent candidates.

Such matters as the order of candidates' names on ballots (*Huff v. State Board of Elections,* 57 Ill. 2d 74) and the status of nominees named in group nominating petitions in the allocation of those ballot positions (*Bradley v. Lunding,* 63 Ill. 2d 91) are widely believed to be of importance to candidates and have recently been considered by this court. Similarly, certain advantages are believed to stem from the association of candidates in a political party as distinguished from running as independ-

ents. It has been suggested that among these advantages is the availability of the combined efforts of the candidates and their supporters for the election of the entire slate, the savings which can be effected by joint advertising and the employment of workers, and the fact that a voter, by marking the appropriate circle at the top of the column, casts a ballot for the entire ticket.

Obviously, it was the legislative intent that candidates who sought the advantages believed to result from association in a political party meet certain requirements, one of which is that the petition for the formation of such party "shall contain a complete list of candidates of such party for all offices to be filled in the \*\*\* political subdivision \*\*\* at the next ensuing election then to be held; \*\*\* " (Ill. Rev. Stat. 1975, ch. 46, par. 10—2). Nothing in the majority opinion serves to render this requirement unreasonable or unconstitutional.

The majority states that "[s]ection 10—2 contains no language authorizing the board to remove qualified candidates because a candidate for another office is found to be ineligible" (67 Ill. 2d at 176) and then proceeds to discuss at great length constitutional issues which are not presented by this record. We were not here confronted, nor were we required to decide, whether the individual petitioners were entitled to remain on the ballot as independent candidates. Their prayer for relief asked only that the defendant be ordered to print the names of the individual petitioners and the Independent Township Caucus Party on the official ballot and sought no alternative relief. Had such alternative relief been sought and denied there might conceivably be some reason for the lengthy and, under these circumstances, completely unnecessary, constitutional discussion in the majority opinion. The majority also appears to conclude that the requirement for a complete list of candidates can, in some manner, be distinguished from " 'a complete list of *eligible* candi-

dates.' " (67 Ill. 2d at 179.) It does not appear unreasonable that a group purporting to form a new political party be required to determine that its candidates are qualified to run for the offices they seek. Under the rationale of the majority opinion a new political party could field a slate of candidates knowing that all but one of them were ineligible and thus achieve the bizarre result of placing on the ballot a "new political party" with a single candidate. To thus flout the legislative intent so clearly demonstrated by the explicit statutory provisions is violative of the established rules for the construction of statutes.