# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Clarke v. Community Unit School District 303*, 2012 IL App (2d) 110705

---

| | |
|---|---|
| Appellate Court Caption | J. LYELL CLARKE, JIM DONOVAN, RANDEE DONOVAN, ANTHONY T. EMRALINO, JR., JENNIFER GUERRERO, MARC GUERRI, BETH HEILIGER, ELIZABETH LARSON, ASHLEY MURPHY, GREG SENGSTOCK, JILL SENGSTOCK, KIM SCHULZE, STEVEN SCHULZE, LARRY A. NORGAARD, TERRY SUESSEN, AMY SUESSEN, and PAT JENSEN, Plaintiffs-Appellants, v. COMMUNITY UNIT SCHOOL DISTRICT 303, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-11-0705 |
| Filed | June 20, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action seeking to force a school district to comply with requirements of the School Code and the No Child Left Behind Act, the trial court's entry of judgment on the pleadings was affirmed in part and reversed in part where plaintiffs' complaint was sufficient to withstand a motion for judgment on the pleadings and plaintiffs were entitled to proceed with a *mandamus* action to compel defendant to comply with the School Code and plaintiffs had standing based on their legally cognizable interest as representatives of their children, but defendant was entitled to judgment on the pleadings on the claim that defendant violated due process by failing to disclose its reorganization plan in a timely manner and that a writ of *certiorari* should have been granted. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 11-CH-1250; the Hon. Thomas E. Mueller, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | Timothy P. Dwyer, of Law Offices of Timothy P. Dwyer, of St. Charles, for appellants. |
| | S. Bennett Rodick, Robert E. Swain, Anthony J. Loizzi, and Jennifer A. Mueller, all of Hodges, Loizzi, Eisenhammer, Rodick & Kohn, LLP, of Arlington Heights, for appellee. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Presiding Justice Jorgensen and Justice Schostok concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiffs appeal the trial court's order granting defendant's motion for judgment on the pleadings. On appeal, plaintiffs argue that the trial court erred by granting defendant judgment on the pleadings, because: (1) there were numerous material facts in dispute; (2) the regulatory framework demands compliance with the Illinois School Code (School Code) (105 ILCS 5/1-1 *et seq.* (West 2010)) and its regulations; (3) defendant cannot use its general powers to violate specific provisions of the School Code; (4) plaintiffs' due process claim was adequately pled; (5) they have an implied right of action under the School Code; (6) they have a valid claim to a writ of *certiorari*; and (7) they are entitled to injunctive relief. We affirm in part, reverse in part, and remand for further proceedings.

¶ 2                                    I. BACKGROUND
¶ 3    In January 2002, the federal government implemented the No Child Left Behind Act of 2001 (NCLB) (20 U.S.C. § 6301 *et seq*. (Supp. I 2001)), requiring states to establish and enforce statewide learning standards and to achieve adequate yearly progress (AYP) toward those standards, as measured by federally approved standardized tests. See 20 U.S.C. § 6311 (Supp. II 2002). To comply with the NCLB, the Illinois General Assembly enacted Public Act 93-470, § 5 (eff. Aug. 8, 2003), which amended sections of and added sections to the School Code.

¶ 4		Schools that fail to meet AYP criteria for two consecutive years are placed on "academic early warning status for the next school year" and they remain on such status if they fail to meet AYP criteria for a third consecutive year. 105 ILCS 5/2-3.25d(a) (West 2010). After four years of failing to meet AYP criteria, schools are placed on "initial academic watch status." *Id.* If a school is on academic watch status for five consecutive years, the district "must develop a school restructuring plan for the school that must be approved by the school board." *Id.*

¶ 5		The School Code also provides:

> "A school district that has one or more schools on academic early warning or academic watch status shall prepare a revised School Improvement Plan [SIP] or amendments thereto setting forth the district's expectations for removing each school from academic early warning or academic watch status and for improving student performance in the affected school or schools." *Id.*

School districts that fail to make reasonable efforts to implement a SIP could suffer the loss of state funds or be subject to other state intervention. 105 ILCS 5/2-3.25f(a), (b) (West 2010).

¶ 6		Regarding the implementation of a SIP, section 2-3.25d(c) of the School Code provides:

> "(c) All revised School and District Improvement Plans shall be developed in collaboration with parents, staff in the affected school or school district, and outside experts. All revised School and District Improvement Plans shall be developed, submitted, and monitored pursuant to rules adopted by the State Board of Education. The revised Improvement Plan shall address measurable outcomes for improving student performance so that such performance meets adequate yearly progress criteria as specified by the State Board of Education. All school districts required to revise a School Improvement Plan in accordance with this Section shall establish a peer review process for the evaluation of School Improvement Plans." 105 ILCS 5/2-3.25d(c) (West 2010).

¶ 7		Title 23, section 1.85, of the Illinois Administrative Code provides in relevant part:

> "[Section] 2-3.25d of the School Code requires each district to revise the school improvement plans of any of its schools that are placed on academic early warning or academic watch status and to revise the district's improvement plan if it is placed on academic early warning or academic watch status. Similarly, restructuring plans are required for schools that remain on academic watch status after a fifth annual calculation. As used in this Section, 'NCLB' refers to Public Law 107-110, the No Child Left Behind Act of 2001 (20 USC 6301 et seq.).
>
> a) A revised school improvement plan shall be submitted to the local school board (and to the local school council in a district operating under Article 34 of the School Code) no later than three months after the district's receipt of notification regarding the school's status. During the 45-day period following its submission to the local board and prior to the board's final approval, each plan shall undergo a peer review process designed by the district.
>
> 1) In school districts with a population of 500,000 or fewer, revised school improvement plans shall be required to cover the two school years following the

assessment necessitating the plan and to:

A) incorporate strategies based on scientifically based research and an analysis of State and local assessment data and other information that will strengthen the core academic subjects in the school and address the specific academic areas in which the school's performance has been deficient (NCLB, Section 1116(b)(3)(A)(i));

B) include information about the extent to which all students in the grade levels chosen by the district pursuant to Section 2-3.63 of the School Code are achieving in the fundamental learning areas;

C) adopt policies and practices concerning the school's core academic subjects that have the greatest likelihood of ensuring that all subgroups enrolled in the school will meet the State's proficient level of achievement not later than the end of the 2013-14 school year, including:

i) specific, measurable steps to be taken,

ii) a timeline for these activities, and

iii) a budget for these activities (NCLB, Section 1116(b)(3)(A)(ii));

D) include professional development activities for at least the staff providing services in the academic areas in which the school's performance has been deficient (NCLB, Section 1116(b)(3)(A)(iii));

E) incorporate a teacher mentoring program (NCLB, Section 1116(b)(3)(A)(x));

F) establish specific annual, measurable objectives for continuous and substantial progress by each subgroup of students enrolled in the school that will ensure that all such subgroups will make adequate yearly progress and meet the State's proficient level of achievement not later than the 2013-14 school year (NCLB, Section 1116(b)(3)(v));

G) describe how the school will provide written notice about the identification to parents of each student enrolled in each school, in a format and, to the extent practicable, in a language that the parents can understand (NCLB 1116(b)(3)(A)(vi));

H) specify the responsibilities of the school and the school board under the plan, including the internal and external technical assistance to be provided by the district, technical assistance requested of ISBE, and, if applicable, the district's fiscal responsibilities under Section 1120A of NCLB (NCLB, Section 1116(b)(3)(A)(vii));

I) include strategies for promoting effective parental involvement in the school (NCLB, Section 1116(b)(3)(A)(viii));

J) incorporate, as appropriate, activities before school, after school, during the summer, and during any extension of the school year (NCLB, Section 1116(b)(3)(A)(ix)); and

K) include a process for monitoring progress and revising the plan as

needed.

    2) In school districts operating under Article 34 of the School Code, school improvement plans shall comply with the requirements set forth in Section 34-2.4 of the School Code and, if applicable, the requirements set forth in Section 1116 of NCLB.

    3) Each newly established school shall be required to have a school improvement plan in place by the beginning of its second year of operation. School improvement plans for new schools shall conform to the requirements of subsection (a)(1) or (a)(2) of this Section, as applicable.

* * *

    c) For purposes of compliance with Section 2-3.25d of the School Code [105 ILCS 5/2-3.25d], the requirement for collaboration with 'outside experts' in the development of revised school and district improvement plans shall be met through the involvement of a school support team as defined in NCLB, Section 1117(a)(5), or by involving one or more other individuals who would qualify as members of a school support team pursuant to that definition." 23 Ill. Adm. Code 1.85 (2012).

¶ 8    Prior to the 2011-12 school year, Davis Elementary and Richmond Elementary Schools in Kane County, Illinois, served students in kindergarten through fifth grade. Beginning in the 2011-12 school year, defendant implemented a reorganization plan that reconfigured the schools. Thereafter, one school served students in kindergarten through second grade and the other school served third grade through fifth grade. Plaintiffs are parents of students who attend Davis. Defendant is a public school district organized under the School Code (105 ILCS 5/1-1 *et seq.* (West 2010)).

¶ 9    Beginning in the 2007-08 school year, all students, including those who were "limited English proficient" (LEP), were included in state testing. 31 Ill. Reg. 9897 (eff. June 26, 2007). For three consecutive school years, 2007-08, 2008-09, and 2009-10, Richmond failed to achieve AYP because some of its students were LEP. Defendant offered parents of Richmond students the option to enroll their children in higher performing schools. See 105 ILCS 5/34-225 (West 2010). As a result, by the 2010-11 school year, enrollment at Richmond fell by 117 students and Davis became overcrowded. Beginning in the 2011-12 school year, defendant implemented its reorganization plan.

¶ 10    On June 3, 2011, plaintiffs filed a five-count second amended complaint (hereinafter, complaint). Plaintiffs alleged that, since 2007, "a subgroup of Richmond students with Limited English Proficiency ('LEP') have not achieved passing ISAT [Illinois Standard Achievement Test] scores." Defendant instituted a SIP during the 2007-08 school year. Since the SIP was implemented, Richmond students have failed to achieve satisfactory ISAT scores. Many students transferred to another school. Defendant's reorganization plan, implemented in the fall of 2011, "is directed at improving ISAT scores." However, the plan does not "implement a viable method to raise the ISAT scores" and attempts to "circumvent the requirements of the [School] Code by consolidating Richmond and Davis schools" prematurely. Defendant attempts to "enlarge the period of time in which [its] students may continue to fail to achieve satisfactory ISAT scores so as to artificially defer the time when

a mandatory restructuring" would be imposed following a fifth failing year.

¶ 11 Plaintiffs further alleged that the reorganization plan is subject to the legal requirements of the School Code and that it violates the School Code and applicable regulations. The plan fails to: address the underlying problem causing the underperforming student subgroup at Richmond to persistently fail to achieve satisfactory ISAT scores; and "address the legally mandated criteria in the [School] Code." Further, the plan disrupts the parents and children of Davis and Richmond schools.

¶ 12 Count I, requesting declaratory judgment, alleged, in part, that defendant's reorganization plan violated the School Code and its regulations because defendant failed to: (1) develop the plan "in collaboration with the parents and outside experts" and staff at either Richmond or Davis school; (2) provide criteria to measure student performance or delineate a peer review process; (3) incorporate any scientifically based strategies; (4) provide information about the extent to which students subject to the plan are achieving in fundamental learning areas; (5) adopt policies or practices that will have the greatest likelihood of ensuring that all subgroups will meet state standards; (6) enumerate specific measures to be taken and specify a timeline or budget for those mandated activities; (7) provide professional development standards; (8) establish specific, annual measurable objectives for continuous and substantial progress for each subgroup; and (9) specify the responsibilities of the schools and the school board regarding internal and external assistance. Plaintiffs cited section 2-3.25d of the School Code and title 23, section 1.85, of the Administrative Code.

¶ 13 Count II alleged that defendant violated plaintiffs' "right to due process under the Illinois Constitution." Plaintiffs alleged that defendant intentionally withheld the reorganization plan knowing that it would be controversial. This prevented "public knowledge and public debate during the Election" about the plan. Defendant "intentionally and wrongfully manipulated the political process and denied Plaintiffs *** their rights to a meaningful, informed vote in the Election." Defendant also gave plaintiffs only 5½ weeks to oppose the plan.

¶ 14 Count III sought, in the alternative to declaratory judgment, a "Common Law Writ of *Certiorari*." Count V[1] sought injunctive relief "including but not limited to enjoining [defendant] from implementing the Plan and otherwise returning the parties to the status quo prior to [defendant's] unlawful adoption of the Plan throughout the pendency of this action and thereafter."

¶ 15 Count VI alleged that defendant violated the Illinois Freedom of Information Act (hereinafter FOIA) (5 ILCS 140/1 *et seq.* (West 2010)). Plaintiffs alleged that they sent defendant a FOIA request to produce "any documents used, considered or relied upon to propose [the reorganization plan]." Plaintiffs did not receive any pertinent documents from defendant, such as "scientific research, school improvement plan objectives, [or] measurements of standards testing." Plaintiffs sought a ruling that defendant failed to comply with the "FOIA Request and otherwise acted in bad faith," and plaintiffs sought a civil penalty pursuant to section 11(j) of FOIA (5 ILCS 140/11(j) (West 2010)).

¶ 16 Defendant filed a motion for judgment on the pleadings, pursuant to section 2-615(e) of

---

[1]The complaint contained no count IV.

the Code of Civil Procedure (Code) (735 ILCS 5/2-615(e) (West 2010)). Defendant argued that its reorganization plan "is not a SIP or any other type of action required under the School Code pursuant to NCLB," but is "designed to address recent student population shifts among the District's elementary schools and lack of students at Richmond." Accordingly, defendant argued that it had authority to implement the reorganization plan by the powers granted to it pursuant to sections 10-20.5, 10-21.3, 10-22.5, 10-22.10 and 10-22.13 of the School Code. 105 ILCS 5/10-20.5, 10-21.3, 10-22.5, 10-22.10, 10-22.13 (West 2010). Defendant also cited *Tyska v. Board of Education of Township High School District 214*, 117 Ill. App. 3d 917 (1983), to support its position.

¶ 17    Defendant also argued that plaintiffs did not have a private right of action under the School Code. Defendant argued that plaintiffs' due process claim failed to state a cause of action, because plaintiffs "have no property interest in a quasi-legislative action by an elected board of education." In the alternative, defendant argued that plaintiffs were given due process because, prior to the reorganization plan's approval, there were numerous informational meetings about the plan with opportunities for public comment and questions. Further, plaintiffs' "children have no property interest in attending their neighborhood school."

¶ 18    In addition, defendant argued that plaintiffs did not have a right to a common-law writ of *certiorari*, because judicial interference with defendant's exercise of its discretionary powers is against public policy. Further, plaintiffs have an alternative remedy, *i.e.*, a complaint to the Illinois State Board of Education. In addition, defendant argued that plaintiffs did not meet any of the requirements for a preliminary injunction. Finally, defendant argued that plaintiffs' FOIA claim failed to state a cause of action, because defendant "responded to Plaintiffs' FOIA request on February 23, 2011, in full compliance with the law."

¶ 19    After hearing the parties' arguments, the trial court granted defendant's motion for judgment on the pleadings as to all counts except count VI. The trial court determined that plaintiffs did not have standing or an implied private right of action. Defendant exercised its discretionary authority when it reorganized the schools and "it happened to coincide when one of the two schools was subject to a SIP under the NCLB Act. That is a coincidence from a legal standpoint." Regarding plaintiffs' due process claim, the court determined that there is no property interest in attending a neighborhood school. The court concluded by stating:

"It really falls down to have the plaintiff[s] stated a valid cause of action, and that rises and falls on whether or not they have standing and whether or not they have the private right of action to attack what they argue is a capital SIP as it–I would make the finding that it is simply a plan adopted by the school board to try to deal with other issues which coincidentally hopefully deal with the issues that caused the SIP–the need for the SIP at Richmond in the first place."

On July 18, 2011, plaintiffs voluntarily dismissed their one remaining count, count VI, and filed their notice of appeal.

¶ 20                                    II. ANALYSIS

¶ 21        Plaintiffs challenge the trial court's order granting defendant's section 2-615(e) motion for judgment on the pleadings. Thus, our review is *de novo*. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). A motion for judgment on the pleadings is like a motion for summary judgment limited to the pleadings. *Id.* Judgment on the pleadings is proper only when the pleadings disclose no genuine issue of material fact and that the defendant is entitled to judgment as a matter of law. *Id.* When a party moves for judgment on the pleadings, it admits the truth of the well-pled facts of the complaint and the reasonable inferences drawn therefrom. See *id.* When reviewing the trial court's decision to grant the motion, we must draw all reasonable inferences in favor of the plaintiff and construe the allegations contained in the complaint strictly against the defendant. *Nationwide Mutual Fire Insurance Co. v. T&N Master Builder & Renovators*, 2011 IL App (2d) 101143, ¶ 8. We construe the allegations in the complaint in the light most favorable to the plaintiff. *Young v. Bryco Arms*, 213 Ill. 2d 433, 441 (2003). The grant of a section 2-615(e) motion for judgment on the pleadings is proper only if it is clearly apparent that no set of facts can be proven that would entitle the plaintiff to recovery. *Jordan v. Knafel*, 355 Ill. App. 3d 534, 539 (2005).

¶ 22        We first address the issue of whether the trial court correctly determined that plaintiffs do not have an implied private right of action. The Illinois Supreme Court's decision in *Noyola v. Board of Education of the City of Chicago*, 179 Ill. 2d 121 (1997), is instructive regarding this issue. In *Noyola*, the plaintiffs, the parents of economically disadvantaged school students, brought an action challenging the manner in which the state and local boards of education allocated funds pursuant to a statute designed to enable school districts with modest property tax bases to achieve a minimum level of funding per pupil. *Id.* at 125, 127-28. The court concluded that, because the plaintiffs were not attempting to use the statute as a predicate for a tort action but were attempting to force public officials responsible for implementing the statute to do what the law requires, it was not necessary to examine the criteria for whether an implied statutory action exists. *Id.* at 132. The court stated that determining whether an implied private right of action exists is appropriate only where the plaintiff is attempting to use a statutory enactment as the predicate for a tort action. *Id.* The court concluded that an action for *mandamus* was the proper avenue for the plaintiffs' claim. *Id.* The court explained:

        "Unlike the [implied private right of action] cases cited above, the plaintiffs in this case are not attempting to use a statutory enactment as the predicate for a tort action. What they want is to force the public officials responsible for implementing section 18-8(A)(5)(i) to do what the law requires.

            *** Where, as alleged here, public officials have failed or refused to comply with requirements imposed by statute, the courts may compel them to do so by means of a writ of *mandamus*, provided that the requirements for that writ have been satisfied." *Id.*

        The court concluded that the plaintiffs could pursue a *mandamus* action to compel the defendants' compliance with the School Code. *Id.* at 135. The court reasoned that section 18-8(A)(5)(i)(1) imposed specific requirements regarding the use of the funds in question and

that the plaintiffs' complaint had alleged that the defendants used the funds in violation of those requirements. *Id.*

¶ 23    As in *Noyola*, plaintiffs here do not seek to use defendant's alleged violations of the School Code as a basis for imposing tort liability on defendant for injuries caused by the violations. Rather, as in *Noyola*, plaintiffs seek to force the public officials responsible for implementing various sections of the School Code to do what the law requires. Although plaintiffs' complaint does not explicitly seek a writ of *mandamus*, the same was true of the plaintiffs' complaint in *Noyola*. The supreme court nonetheless construed the complaint as sufficiently pleading a *mandamus* action. *Id.* Therefore, we must review the allegations of plaintiffs' complaint in this case to determine whether they have pled the necessary elements for a writ of *mandamus*.

¶ 24    If public officials have failed to comply with requirements imposed upon them by statute, a court may compel them to do so by a writ of *mandamus*. *Id.* at 132. To be entitled to such extraordinary relief a plaintiff must allege facts that establish: (1) a clear right to the relief requested; (2) a clear duty of the defendant to act; and (3) clear authority in the defendant to comply with the writ. *Id.* at 133. A plaintiff will not be entitled to a writ of *mandamus* when its effect would be to substitute the court's judgment or discretion for that of the public official. *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 229 (1999).

¶ 25    In this case, plaintiffs' complaint contains sufficient allegations for a writ of *mandamus*. Section 2-3.25d(c) of the School Code and title 23, section 1.85, of the Administrative Code impose specific requirements regarding the implementation of a SIP; defendant is the party responsible under the law for meeting those requirements; and, according to plaintiffs' complaint, defendant has violated the law, in contravention of its statutory and regulatory responsibilities.

¶ 26    Defendant argues that, in implementing the reorganization plan, it made decisions regarding the operation and management of its schools pursuant to the discretionary powers granted to it by the legislature. Section 10-20 of the School Code provides that a school board:

"has the powers enumerated in the Sections of this Article following this Section. This enumeration of powers is not exclusive, but the board may exercise all other powers not inconsistent with this Act that may be requisite or proper for the maintenance, operation, and development of any school or schools under the jurisdiction of the board. This grant of powers does not release a school board from any duty imposed upon it by this Act or any other law." 105 ILCS 5/10-20 (West 2010).

These duties and powers include the authority: "[t]o adopt and enforce all necessary rules for the management and government of the public schools" (105 ILCS 5/10-20.5 (West 2010)); "[t]o establish one or more attendance units within the district" (105 ILCS 5/10-21.3 (West 2010)); "[t]o assign pupils to the several schools in the district" (105 ILCS 5/10-22.5 (West 2010)); "[t]o have control and supervision of all public schoolhouses in their district" (105 ILCS 5/10-22.10 (West 2010)); and "[t]o decide when a site or building has become unnecessary, unsuitable or inconvenient for a school" (105 ILCS 5/10-22.13 (West 2010)). Defendant cites *Tyska*, 117 Ill. App. 3d at 930, to support its argument:

"It is not for the courts to determine whether or not the means ultimately adopted by the Board are wise or expedient nor to interfere with the exercise of the powers by the members of the Board in matters confided to their discretion."

In *Tyska*, the plaintiffs challenged the school board's decision to close a high school and assign incoming freshman to another high school. *Id.* at 918. The appellate court reversed the trial court's grant of an injunction, holding that the school board had the discretionary authority granted to it by the legislature to discontinue or abandon the use of a public school within the boundaries of its jurisdiction and assign students to another school. *Id.* at 921-23. The court reasoned that "[a] school board's restructuring and determination of *** attendance zones within the school district is a quasi-legislative function." *Id.* at 927.

¶ 27    *Tyska* is distinguishable from the case at bar. It is important to note that *Tyska* predates the NCLB by 20 years. Therefore, the issue raised in this case, whether the provisions granting school boards certain powers govern over the provisions mandating compliance with NCLB, was not raised in *Tyska*. Thus, *Tyska* is not controlling in this case.

¶ 28    Further, section 10-20 of the School Code limits the powers of school boards in the following manner: "This grant of powers does not release a school board from any duty imposed upon it by this Act or any other law." 105 ILCS 5/10-20 (West 2010). Section 2-3.25d of the School Code and title 23, section 1.85, of the Administrative Code impose duties upon defendant. Thus, the powers granted to defendant in article 10 of the School Code are limited by these duties.

¶ 29    In addition, it is a fundamental rule of statutory construction that where there exists a general statutory provision and a specific statutory provision both relating to the same subject–in either the same or another act–the specific provision controls and should be applied. *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002). The sections in article 10 of the School Code cited by defendant set forth the general powers of school boards, while section 2-3.25d of the School Code and its regulations specifically address a school district's duties as required by NCLB. Thus, defendant was not entitled to judgment on the pleadings based on the powers granted to it in article 10 of the School Code, as the general provisions do not control the specific provisions regarding compliance.

¶ 30    Defendant contends that a *mandamus* action could be sufficiently pled only if its reorganization plan is a SIP. Plaintiffs argue that there is a genuine issue of material fact regarding whether defendant's plan is a SIP. A genuine issue of material fact exists where the facts are in dispute or where reasonable minds could draw different inferences from the undisputed facts. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

¶ 31    Plaintiffs allege that the reorganization plan is a SIP and that it is subject to the relevant provisions of the School Code and its regulations. Defendant argues that the plan is not a SIP, but a proper exercise of its discretion under the general provisions of the School Code (105 ILCS 5/art. 10 (West 2010)). Defendant also alleged in its memorandum in support of its motion for judgment on the pleadings that "the Plan has a dual purpose: to address student population shifts and the resulting underutilization of Richmond, and increase the educational outcomes of the students who will attend the newly reconfigured schools." However, the record contains a copy of the "Educational Plan Proposal for Davis and

Richmond," a public presentation prepared and made by defendant to explain to the community the need for and purpose of the plan. The presentation begins with "How did we get here?" The presentation explains that Richmond failed to meet the ISAT and AYP criteria for three academic years in a row. The presentation states that Richmond's substandard performance resulted in students transferring from Richmond and in overcrowding at Davis. Considering the pleadings and attached documents in the light most favorable to plaintiffs (see *Young*, 213 Ill. 2d at 441), we determine that a genuine issue of material fact exists regarding whether the plan is a SIP. Accordingly, plaintiffs' complaint alleging violations of the School Code is sufficient to withstand a motion for judgment on the pleadings and plaintiffs may proceed with a *mandamus* action to compel defendant to comply with the relevant provisions of the School Code.

¶ 32        Plaintiffs also argue that their due process claim was adequately pled. Plaintiffs alleged a violation of their due process rights under the Illinois Constitution (Ill. Const. 1970, art. I, § 2). Plaintiffs argue that their "due process claim is specifically that Defendant intentionally withheld any public disclosure of The Plan to prevent the voters, including Plaintiffs, from having a meaningful opportunity to vote on the matter at the time of the [School] Board elections."[2] Plaintiffs assert that they have a liberty interest. Plaintiffs cite only *Anderson v. Schneider*, 67 Ill. 2d 165 (1977), to support their argument. However, *Anderson* does not provide support for the cause of action alleged by plaintiffs.

¶ 33        In *Anderson*, an election board ordered the names of all the candidates of a new political party to be removed from the ballot because one of the party's candidates was ineligible. *Id.* at 170. The trial court affirmed the election board's decision. The Illinois Supreme Court held that procedural due process was violated because the election board applied a new interpretation of a regulation to the candidates without prior notice. *Id.* at 178. The only liberty interest that can be gleaned from *Anderson* is the right of a candidate or a party to be placed on a ballot. See *id.* at 177. In this case, plaintiffs do not allege that they were denied this right. Rather, plaintiffs allege that defendant denied school board voters the ability to make a meaningful choice because it failed to disclose the reorganization plan in a timely manner. *Anderson* does not establish the liberty interest claimed by plaintiffs, and we know of no such liberty interest. Therefore, regarding plaintiffs' due process claim, defendant is entitled to judgment on the pleadings.

¶ 34        Plaintiffs also assert that they are entitled to a writ of *certiorari*. The common-law writ of *certiorari* provides a means for a party who has no other avenue of appeal or direct review to obtain review of an action by a court or other tribunal that exercised quasi-judicial functions. *Reichert v. Court of Claims*, 203 Ill. 2d 257, 260 (2003). In this case, plaintiffs have an avenue of appeal by an action for a writ of *mandamus*. Thus, the writ of *certiorari* is not available to plaintiffs.

---

[2]Plaintiffs' complaint alleged that they were denied "meaningful notice or a right to be heard before adopting the Plan" and that, due to defendant withholding the plan from public disclosure, plaintiffs were unable to "institute legal challenges" and/or "run for positions on the school board that opposed the plan," and thus voters were prevented from having a meaningful opportunity to vote on the matter at the time of the board elections.

¶ 35 Plaintiffs also argue that they are entitled to injunctive relief. The plaintiffs in *Noyola* also asserted a right to injunctive relief and the supreme court held that the proper remedy was a writ of *mandamus*. See *Noyola v. Board of Education of the City of Chicago*, 227 Ill. App. 3d 429, 432 (1992) (plaintiffs' complaint sought injunctive relief); *Noyola*, 179 Ill. 2d at 133 (court held that *mandamus* was proper remedy). Because we have determined that the proper cause of action is for a writ of *mandamus*, plaintiffs' cause of action for injunctive relief need not be addressed.

¶ 36 Defendant contends that plaintiffs lack standing. It is well settled that, in Illinois, lack of standing is an affirmative defense. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 254 n.4 (2010) (citing *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 494 (1988)). Although standing is determined by the allegations contained in the complaint, a plaintiff need not allege facts establishing standing. Rather, a defendant has the burden to both plead and prove a plaintiff's lack of standing. *Law Offices of Colleen M. McLaughlin v. First Star Financial Corp.*, 2011 IL App (1st) 101849, ¶ 16. Because lack of standing is an affirmative defense, it must be raised in a motion to dismiss brought pursuant to section 2-619(a)(9) of the Code, and not in a section 2-615 motion. *Record-A-Hit, Inc. v. National Fire Insurance Co. of Hartford*, 377 Ill. App. 3d 642, 648 (2007). Therefore, the issue is deemed forfeited.

¶ 37 In this case, defendant filed a motion for judgment on the pleadings, pursuant to section 2-615(e) of the Code, attacking the legal sufficiency of plaintiffs' complaint. Defendant did not raise the issue of standing in its section 2-615(e) motion, nor did it file an appropriate section 2-619 motion. The trial court, *sua sponte*, without the benefit of argument, determined that plaintiffs lacked standing. Motions brought pursuant to sections 2-615 and 2-619 are significantly different. *Mutual Management Services, Inc. v. Swalve*, 2011 IL App (2d) 100778, ¶ 5. A section 2-615 motion attacks the legal sufficiency of the complaint by alleging defects on the face of the complaint, whereas a section 2-619 motion assumes that a cause of action has been stated but asserts that the claim is defeated by other affirmative matter. *Id.* Because defendant failed to raise the issue of standing as an affirmative defense in a section 2-619 motion and the issue was not argued before the trial court, we need not consider the issue here. See *id.* However, in the interest of judicial economy, we shall address the issue.

¶ 38 The doctrine of standing is intended to ensure that issues are raised and argued only by those parties with a real interest in the outcome of the controversy. *Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 35. Standing is established by demonstrating some injury to a legally cognizable interest. *Id.* Standing requires that a party, in either an individual or a representative capacity, is entitled to have the court decide the merits of a dispute or a particular issue. *Id.* ¶ 36.

¶ 39 In this case, there is a genuine issue of material fact regarding whether the reorganization plan is a SIP under the School Code. Plaintiffs properly alleged that the plan violated the School Code. The plan forces plaintiffs' children to attend Richmond, whereas, previously, they would have attended Davis, a higher achieving school. Further, implementation of an unlawful SIP at Davis would harm plaintiffs' children and frustrate the purpose of NCLB. As part of the plan, Davis has been broken up, even though it was not underperforming.

-12-

Now, according to plaintiffs, it is part of an unlawful SIP. Thus, we determine that plaintiffs, as representatives of their children, have a legally cognizable interest. Accordingly, plaintiffs have standing.

¶ 40                                  III. CONCLUSION

¶ 41         The judgment of the circuit court of Kane County is affirmed in part and reversed in part and the cause is remanded for further proceedings.

¶ 42         Affirmed in part and reversed in part; cause remanded.