NOTICE

Decision filed 04/28/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190314-U

NO. 5-19-0314

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| SUNNYBROOK, LP, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 18-MR-884 |
| | ) | |
| THE CITY OF ALTON, ILLINOIS, | ) | |
| an Illinois Municipal Corporation, | ) | Honorable |
| | ) | David W. Dugan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Moore and Vaughan\* concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's order is vacated where *mandamus* relief was incorrectly granted provided the requesting party had no clear right to the issuance of a building permit and the court's order was discretionary, not ministerial, in nature. Despite the erroneous *mandamus* order, the court's contempt order is affirmed.

¶ 2    Defendant, the City of Alton, Illinois (City), appeals the circuit court's June 5, 2019, order granting summary judgment in favor of plaintiff, Sunnybrook LP (Sunnybrook), as to count III of the amended complaint. Provided the court determined

_____

\*Justice Overstreet was originally assigned to participate in this case. Justice Vaughan was substituted on the panel subsequent to Justice Overstreet's election to the Illinois Supreme Court and has read the briefs and listened to the recording of oral argument.

1

there was no genuine issue of material fact relative to count III (*mandamus*) of Sunnybrook's amended complaint, the court issued a writ of *mandamus* on June 5, 2019, directing the City to grant Sunnybrook the pending building permit application filed on November 16, 2018. When the City failed to comply, the court held the City in contempt of court on June 27, 2019. For the following reasons, we vacate the June 5, 2019, *mandamus* order and affirm the court's June 27, 2019, contempt order.[1]

¶ 3                                                    I. Background

¶ 4        Sunnybrook is the developer[2] of the "Community of Sunnybrook" (Sunnybrook Project), a proposed affordable housing development to be built in Alton, Illinois. The Sunnybrook Project is a multi-family housing development consisting of 10 multiple family structures totaling 40 leased units. A portion of the Sunnybrook Project would be financed through the Low-Income Housing Tax Credit (LIHTC) program, with 11 units subsidized by project-based vouchers. After a 15-year compliance period of leasing the units, as required by the LIHTC program, the units would be made available for sale.

¶ 5        On June 15, 2017, in support of the Sunnybrook Project, the City's former mayor, Brant Walker, executed a Memorandum of Understanding (MOU) with EBJJ, LLC, a

---

[1]The City requests this court to vacate the circuit court's April 29, 2019, order granting Sunnybrook partial summary judgment on the issue concerning a planned development procedure. The City, however, did not include the April 29, 2019, order in its notices of appeal. Accordingly, this court will not address the April 29, 2019, order.

[2]The City asserts in its motion to sanction and strike Sunnybrook's brief that Sunnybrook is not the developer of the Sunnybrook Project. However, the uncontradicted affidavits of Ryan Morrissey, David Gerber, and Edward Hightower, attached to Sunnybrook's March 20, 2019, motion for summary judgment, reference Sunnybrook as the developer of the project. Because the City failed to contradict the affidavits by counteraffidavit, these facts are admitted and taken as true. See *Purtill v. Hess*, 111 Ill. 2d 229, 241 (1986) ("[F]acts contained in an affidavit in support of a motion for summary judgment which are not contradicted by counteraffidavit are admitted and must be taken as true for purposes of the motion.").

corporation managed by Edward Hightower and partnering with Sunnybrook. The MOU confirmed that the Sunnybrook Project was a valid LIHTC project that included market-rate units for lease in an effort to promote economically diverse neighborhoods in Alton. The MOU also confirmed that existing tenants could purchase their unit with accrued annual credits at the completion of the 15-year LIHTC compliance period. Sunnybrook was not listed as a party to the MOU.

¶ 6    Also, on June 15, 2017, Walker sent a letter to the Illinois Housing Development Authority (IHDA) titled, "Letter of Support for The Community of Sunnybrook Alton IL," confirming that the Sunnybrook Project was "directly in line with Alton's growth and revitalization efforts," given it "addresses the need to connect neighborhoods to resources through existing transportation *** and will be key in our efforts to connect entry-level workforce with affordable housing and transportation." Greg Caffey, the City's zoning administrator, also sent a letter to IHDA confirming that the proposed site for the Sunnybrook Project met the City's R-4 multiple family zoning district requirements and that no special use permits were required under the Code of Ordinances for the City of Alton (Alton Code). Caffey sent the same letter to IHDA on January 31, 2018.

¶ 7    On February 23, 2018, Walker sent a letter to IDHA expressing the City's support for the Sunnybrook Project's request to receive Madison County HOME funds.

¶ 8    On May 14, 2018, IHDA approved the Sunnybrook Project's application for LIHTC funding. The following day, however, Walker withdrew the City's support of the Sunnybrook Project.

¶ 9    On May 17, 2018, Walker and other city officials expressed concern over the development, specifically, issues with density, building and site layout, parking and access. In response to the City's concerns, Sunnybrook agreed to modify the Sunnybrook Project, adding roughly $500,000 to the cost of the overall project in construction and development costs. Caffey recommended the design of the development be modified from duplexes to townhomes.

¶ 10    On May 31, 2018, in an effort to compromise, the Sunnybrook development team presented the proposed project modifications[3] to a small number of individuals, including Walker, Caffey, two aldermen, the fire chief and police chief. At the conclusion of the meeting, an agreement was made that Sunnybrook would present the proposed modifications to a committee of aldermen on June 12, 2018.

¶ 11    On June 12, 2018, the Sunnybrook development team did not present the proposed modifications because the City's aldermen vocalized support for the Sunnybrook Project. The next day, however, Walker issued a press release statement publicly retracting support for the Sunnybrook Project, claiming he had been unaware that the units would be leased or subsidized by project-based vouchers.

¶ 12    On June 15, 2018, the City sent a letter to IHDA formally withdrawing support of the Sunnybrook Project. Specifically, Walker stated that the Sunnybrook Project "fails to adhere to the vision we have worked to implement for Alton's long-term growth and

---

[3]The proposed modifications included the following: (1) redesigning the original duplex design to a townhouse design; (2) decreasing the size of the footprint for each building; (3) increasing the side yard setbacks; (4) increasing the number of parking spaces for each of the 40 units and the community building; and (5) increasing the width of the radius of the curb for the cul-de-sac and sidewalks.

revitalization." Walker claimed that the proposed development was not needed, given there was "**NO** shortage of affordable housing," and an additional residential rental development "would depress the value" of existing single-family homes and further decrease the City's revenue as a result of declining property values. (Emphasis in original.) Lastly, Walker requested IHDA to rescind its offer of $1.9 million in funding for the Sunnybrook Project.

¶ 13 On July 31, 2018, Ryan Morrissey, of Morrissey Construction Company, the contractor for the Sunnybrook Project, filed an initial building permit application with the City (first application). The application described the project as "new construction of (10) 4-plex townhomes comprising of 40 residential units and a community center." Hurford Architects, Inc., was listed as the architect, and a "To-be-formed Limited Partnership" was listed as the owner of the development. Sunnybrook was not named as a party to this application.

¶ 14 On August 21, 2018, the City issued a letter denying Sunnybrook's first application after a third-party engineering consultant, who had been hired by the City, had reviewed the first application. Specifically, the first application was denied for failure to submit a preliminary subdivision plat "to divide the property into sellable parcels" after leasing the units for 15 years. Morrissey was invited to correct the deficiencies and submit a new building permit application.

¶ 15 On September 24, 2018, in response to the City's denial letter, Sunnybrook sent a letter to Caffey acknowledging and expressing discontentment with the City's decision. In the written letter, Sunnybrook indicated that it would "consider any additional

5

materials submitted to be a supplement to the initial filing rather than a new application."

Citing to Title 12-1-3 of the Alton Code (Alton City Ordinance No. 6104 (approved Dec. 18, 1996)), Sunnybrook asserted that there was no intention to sell or divide any land, thus, a preliminary subdivision plat was not required prior to construction.

¶ 16    On October 24, 2018, the City informed Sunnybrook that a new application, not a supplement to the first application, would be accepted if Sunnybrook wished to address the issues in the denial letter. The City asserted that "the subdivision requirements will have to be met" because "various individual housing units will be sold as separate properties in the future" and it anticipated "a division from the 11.08 acres to a tract of 6.5 acres."

¶ 17    In a response letter to the City, dated October 29, 2018, Sunnybrook claimed that the City had "disrupt[ed], interfere[d], and ultimate[ly] prevent[ed]" the development to move forward. As such, Sunnybrook requested the City to withdraw the demand for approval of a preliminary subdivision plat, or it would file litigation in federal court claiming a violation of the Fair Housing Act.[4]

¶ 18    On November 2, 2018, Morrissey filed a second building permit application with the City (second application).[5] The second application, similar to the first, listed the

_____

[4]On December 19, 2018, Sunnybrook filed a federal complaint alleging that Walker and the City had racially and socio-economically discriminated against the Sunnybrook Project when Walker and the City possessed full knowledge that minorities in the City had a disproportionate need for affordable housing. On November 13, 2019, the United States District Court for the Southern District of Illinois denied the City's motion to dismiss that was predicated on its allegations that Sunnybrook lacked standing. See *Sunnybrook LP v. City of Alton, Illinois*, 425 F. Supp. 3d 1035 (S.D. Ill. 2019).

[5]We note there is inconsistency within the briefs and record on appeal when referencing the building permit applications. In Morrissey's January 28, 2019, affidavit, he attests to filing three separate applications on July 31, 2018, November 2, 2018, and November 16, 2018, for Sunnybrook. Thus,

6

owner as a "To-be-formed Limited Partnership." Sunnybrook was not named as a party to this application.

¶ 19    On November 5, 2018, while the second application was pending, Sunnybrook filed its initial complaint against the City in the circuit court, seeking declaratory judgment and preliminary injunctive relief (count I) and a temporary restraining order with notice (count II). Specifically, Sunnybrook alleged that it was unnecessary to file a preliminary subdivision plat, pursuant to Titles 12-2-1 and 12-1-3 of the City's Code (Alton City Ordinance No. 6104 (approved Dec. 18, 1996)), because Sunnybrook was not subdividing any land. Instead, Sunnybrook intended to build a multi-family housing rental development to lease 40 units for 15 years. After the 15-year compliance period required by LIHTC, Sunnybrook would then sell the units to tenants in good standing.

¶ 20    Shortly thereafter, on November 7, 2018, Hightower, in a signed affidavit, attested that without some determination by the circuit court regarding the filing of a preliminary subdivision plat, Sunnybrook would lose substantial funding from IHDA. Without IHDA funding, Hightower indicated that irreparable injury and damage to the completion of the Sunnybrook Project would occur.

¶ 21    On November 9, 2018, the City filed an answer to Sunnybrook's complaint. The City asserted that it was unaware of any application that represented Sunnybrook as the developer of the project; Sunnybrook did not hold title to or own any real estate in Alton; Sunnybrook never submitted, amended, or resubmitted a building application;

consistent with the filing dates, we have referenced the building application as "first application," "second application," and "third application" throughout this order.

7

Sunnybrook was never a party to the MOU that Walker signed in 2017; and the first application had been denied for more reasons than a failure to submit a preliminary subdivision plat. The City also asserted that submission of a preliminary subdivision plat was necessary because Sunnybrook intended to make " 'individual' lots from the whole of 'Sunnybrook.' " Additionally, the City asserted several affirmative defenses claiming that Sunnybrook (1) lacked standing, (2) had failed to exhaust its administrative remedies, (3) had failed to diligently pursue remedy or *laches*, and (4) Sunnybrook's development required the submission of a planned development procedure (PDP) before issuance of a building permit.

¶ 22   On November 9, 2018, following a hearing, the circuit court denied Sunnybrook's request for a temporary restraining order (count II). The court, however, reserved jurisdiction over the parties and the questions raised by Sunnybrook's request for declaratory judgment and preliminary injunctive relief (count I), indicating its belief that there was a legal issue to be resolved over whether the development of a multi-family residential development was a "subdivision," which would require the filing of a preliminary subdivision plat. The court subsequently granted Sunnybrook leave to file an amended complaint.

¶ 23   On November 16, 2018, Morrissey filed a third building permit application (third application) with the City. This application, different from the first two prior applications, listed Sunnybrook as the owner of the Sunnybrook Project.[6]

---

[6]Although Sunnybrook was listed as the owner, Keller Construction, Inc., is the record owner of the real estate and holds a quitclaim deed. This is evidenced by a Memorandum of Option, dated May 27,

¶ 24 On December 4, 2018, while the second and third applications were pending, Sunnybrook filed a motion for summary judgment to resolve the subdivision issue alleged in Sunnybrook's initial complaint. Because there was no basis to require the filing of a preliminary subdivision plat, Sunnybrook requested that the circuit court determine whether issuing a building permit could be delayed. Attached to Sunnybrook's motion for summary judgment was Hightower's signed affidavit, attesting that Sunnybrook "does not intend to subdivide the Sunnybrook tract as part of this project or at any time in the future." Hightower also attested that irreparable harm to the completion of the Sunnybrook Project would occur without additional funding from IHDA.

¶ 25 On December 11, 2018, Sunnybrook filed a response to the City's affirmative defenses. In requesting the circuit court to strike each affirmative defense, Sunnybrook asserted that it had standing, and, given it had resubmitted building applications to the City, Sunnybrook had not failed to exhaust its administrative remedies. Sunnybrook also claimed the City was aware that Sunnybrook, as the planned developer, was purchasing the real estate for the development from "Keller Construction, Inc. and the sale ha[d] not yet occurred." Moreover, Sunnybrook asserted that, since a hearing on Sunnybrook's request for a temporary restraining order had occurred, the City's affirmative defense— *laches* or failure to diligently pursue remedy—was moot. Lastly, Sunnybrook claimed that the City's final affirmative defense was meritless because filing a preliminary plat was not required under the PDP set forth in the Alton Code.

---

2017, which detailed Keller Construction, Inc., as the optioner, and EBJJ, LLC, a partner of Sunnybrook, as the optionee, with the option to purchase a parcel of land for the Sunnybrook Project.

¶ 26    Additionally, on December 11, 2018, Sunnybrook filed an amended, three-count complaint incorporating, with no substantive changes, counts I and II from its initial complaint. In count III, Sunnybrook requested the circuit court to grant a preliminary injunction and enter a declaratory judgment determining that Sunnybrook was not required to file a PDP.

¶ 27    On December 12, 2018, the City filed a motion to dismiss Sunnybrook's initial complaint[7] because the City, based on Hightower's representations that Sunnybrook did not intend to subdivide the Sunnybrook tract of land now or at any time in the future, no longer believed that the submission of a subdivision plat was required. Accordingly, because no controversy remained between the parties, the City asserted that a declaratory judgment was unnecessary. The City also filed a motion to strike Sunnybrook's response to the City's affirmative defenses as untimely and counts I and II of the amended complaint as moot.

¶ 28    On December 13, 2018, following a hearing on Sunnybrook's motion for summary judgment, the circuit court determined that both count I of Sunnybrook's initial compliant (declaratory judgment and preliminary injunctive relief concerning the submission of a subdivision plat)[8] and Sunnybrook's motion for summary judgment, as it related to the subdivision issue, were moot. Because Sunnybrook's plans did not include

_____

[7]A careful review of the City's motion to dismiss concerns Sunnybrook's initial "Complaint for Declaratory Judgment" where the City references only the subdivision plat and not the PDP issue that was added to the amended complaint on December 11, 2018.

[8]On January 29, 2019, the circuit court confirmed that count II (temporary restraining order with notice) of Sunnybrook's initial complaint was denied on November 9, 2018, and count I (declaratory judgment and preliminary injunctive relief) of Sunnybrook's initial complaint was determined moot on December 13, 2018.

10

a subdivision of land, "either now or in the future," as agreed to by the parties, the court determined that submission of a subdivision plat was unnecessary.

¶ 29   On December 17, 2018, Sunnybrook filed a response to the City's motion to strike, asserting that it had filed a timely response to the City's affirmative defenses, and that its amended complaint was filed with leave to file by the circuit court on November 9, 2018. Accordingly, Sunnybrook requested that the court deny the City's motion to strike.

¶ 30   On January 7, 2019, Deanna Barnes, zoning administrator for the City, informed Sunnybrook, via letter, that the City's civil engineer prepared comments in regard to the third application, which would be forwarded to Sunnybrook.[9] The letter specifically stated that Sunnybrook's application was "not being denied and shall remain under review," but the City was hopeful that Sunnybrook would "address a number of [the civil engineer's] comments as we continue our review of your application." Sunnybrook was informed that it could appeal any application decision under "either the Zoning Board of Appeals or the Building Board of Appeals as the case may be." A final decision on the third application was not issued at this time.

¶ 31   On January 16, 2019, John Hales, the civil engineer retained by the City to review Sunnybrook's plans, advised Barnes, via letter, that the civil engineering firm for the Sunnybrook Project, Oates Associates, had "satisfactorily completed" all revisions and/or corrections to the civil engineering plan. Accordingly, Hales "concluded that the civil

_____

[9]In a letter to Sunnybrook, Barnes stated that "the latest plans submitted to the City of Alton *** were forward[ed] to *** Hales *** for his review." Based on this, we infer that Barnes is referring to the third and final building permit application that was filed on November 16, 2018.

engineering plans for the Community of Sunnybrook have been designed in accordance with good standards of civil engineering practices, and they should be found acceptable to the City of Alton."

¶ 32    On January 18, 2019, Barnes informed Sunnybrook that the proposed civil engineering plans were found acceptable. Sunnybrook's application as it related to the construction plans, however, remained pending and under review by Sam Shaw of the Alton building department. According to Barnes Sunnybrook's application, as modified by Oates Associates, remained pending and under review, provided Barnes "must await the final review from Mr. Shaw," who was on vacation at the time.

¶ 33    On January 22, 2019, Sunnybrook filed a motion for default judgment claiming the City had failed to file a timely response to Sunnybrook's amended complaint. Sunnybrook also filed a motion for summary judgment as to count III (declaratory judgment) of its amended complaint, claiming, similar to the preliminary subdivision plat issue, that the City had no basis to require Sunnybrook to file a PDP or special use permit.

¶ 34    On January 24, 2019, the City filed a motion to dismiss Sunnybrook's amended complaint under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2018)), arguing that Sunnybrook lacked standing and had failed to exhaust its administrative remedies. Accordingly, the City argued that count III of the amended complaint was not ripe for adjudication.

¶ 35    On January 28, 2019, Morrissey filed an affidavit attesting that "[a]ny and all building permit requests," which included the building permit applications submitted on

July 31, 2018, November 2, 2018, and November 16, 2018, had been filed with the City, "at the request and on behalf of Sunnybrook," the developer and future owner of the real estate on which the project would be constructed. According to Morrissey, the third application, dated November 16, 2018, remained pending with the City.

¶ 36    Also, on January 28, 2019, Sunnybrook filed a response in opposition to the City's motion to dismiss, asserting that it had an interest in an actual controversy with the City, and that it had no available administrative remedy because the City's board of appeals had no power or authority to issue a final administrative order concerning building permits.

¶ 37    On January 29, 2019, the City filed a motion to dismiss with prejudice under section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)), arguing that Sunnybrook had failed to state a cause of action. Also, on January 29, 2019, the circuit court entered an order clarifying that count I (declaratory judgment concerning the subdivision plat) and count II (temporary restraining order with notice) of Sunnybrook's amended complaint were moot. Accordingly, the City's December 12, 2018, motion to dismiss was moot. The court set a hearing for February 4, 2019, to address all pending motions.[10]

¶ 38    On February 4, 2019, the circuit court held a hearing on all pending motions. Following the hearing, the court entered an order disposing of all pending motions. Specifically, the court denied the City's December 12, 2018, motion to strike. The court

---

[10]The list of outstanding motions included the following: (1) the City's December 12, 2018, motion to strike; (2) Sunnybrook's January 22, 2019, motion for summary judgment as to count III (declaratory judgment) of its amended complaint; (3) the City's January 24, 2019, motion to dismiss under section 2-619 of the Code; and (4) the City's January 29, 2019, motion to dismiss under section 2-615 of the Code. Sunnybrook withdrew its January 22, 2019, motion for default judgment.

granted the City's January 29, 2019, section 2-615 motion to dismiss and dismissed Sunnybrook's amended complaint, but granted Sunnybrook leave to file an amended complaint.

¶ 39 On February 11, 2019, Sunnybrook filed a second amended complaint. Sunnybrook restated counts I and II from its initial and first amended complaints, although moot, as determined and clarified by the circuit court in previous orders. Sunnybrook also added counts III and IV. Count III requested issuance of a writ of *mandamus* compelling the City to (1) determine that the Sunnybrook Project had met all requisite requirements for the issuance of a building permit without the need for a PDP or special use permit or (2) issue Sunnybrook a building permit or a decision concerning the third application. Count IV requested the court to issue preliminary and permanent injunctions enjoining the City from creating or imposing additional requirements outside the provisions set forth in the Alton Code.

¶ 40 On February 25, 2019, the City filed a motion to dismiss or strike Sunnybrook's second amended complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)). The City requested the circuit court to strike counts I and II of Sunnybrook's second amended complaint as moot and to dismiss the complaint in its entirety because counts III and IV were "[i]nextricably linked to the preceding Counts I and II, [w]hich present moot issues." Specifically, the City asserted that Sunnybrook's inclusion of counts I and II "tainted the entirety" of the second amended complaint.

¶ 41 On March 20, 2019, Sunnybrook filed a motion for summary judgment as to count III (writ of *mandamus*) accompanied with affidavits of Morrissey, signed January 28,

14

2019;[11] David Gerber, general counsel of Keller Construction Inc., signed January 29, 2019;[12] Hightower, signed February 4, 2019;[13] and Mike Goetz, an employee and agent of Laborers Home Development Corporation, signed February 4, 2019.[14] Sunnybrook argued that there was no genuine issue of material fact regarding whether it had to submit a PDP or obtain a special use permit under the Alton Code.

¶ 42    On March 27, 2019, the circuit court held a hearing on the City's motion to dismiss or strike the second amended complaint and Sunnybrook's motion for summary judgment as to count III (writ of *mandamus*). Following argument, the court denied the City's motion to dismiss or strike the second amended complaint.[15] The court ordered the City "to file a response to the second amended complaint by April 10, 2019, [and] respond to the motion for summary judgment by April 17, 2019." A hearing on Sunnybrook's motion for summary judgment was continued until April 24, 2019. No status update on the third application was provided by the City.

---

[11]Morrissey attested that "[a]ny and all building permits" had been filed with the City, "at the request and on behalf of Sunnybrook," the developer and future owner of the real estate on which the project would be constructed.

[12]Gerber attested that Keller Construction, Inc., as fee simple owner, had executed an agreement to sell real estate to the developers of the Sunnybrook Project provided Sunnybrook was able to obtain the necessary permits.

[13]Hightower attested that Sunnybrook had a contract to purchase real estate in Alton from Keller Construction, Inc., and because of the City's delays, the project had lost "approximately $400,000 in Home Funds" after the City announced its opposition to the development and had added $500,000 in construction and development costs to the project.

[14]Goetz attested that Laborers Home Development Corporation intended to be an operational partner with Sunnybrook, sharing administrative and operational control over the development, upon construction.

[15]The court denied the City's motion but essentially granted its request to strike counts I and II as moot, given the court had previously determined these counts moot.

15

¶ 43   On April 10, 2019, the City filed an answer, alleging affirmative defenses to Sunnybrook's second amended complaint. The City, however, failed to file a response or counteraffidavits to Sunnybrook's motion for summary judgment, although the court had ordered the City to "respond to the motion for summary judgment by April 17, 2019."

¶ 44   On April 22, 2019, the City filed a motion for summary judgment.[16] The following day, the City also filed a motion to dismiss Sunnybrook's second amended complaint.[17]

¶ 45   On April 24, 2019, the circuit court held a hearing on Sunnybrook's January 22, 2019, motion for summary judgment as to count III (writ of *mandamus*). Instead of responding to Sunnybrook's motion for summary judgment, as ordered by the court, the City filed a motion for summary judgment unsupported by affidavit. The City acknowledged that it had failed to file counteraffidavits in response to the affidavits Sunnybrook had attached to its motion for summary judgment.

¶ 46   On April 29, 2019, the circuit court granted Sunnybrook partial summary judgment, finding that no PDP was required for the Sunnybrook Project, and, as agreed to by the parties, no special use permits were required. Specifically, the court determined that the ordinances of the Alton Code regarding the need for a PDP had "no application in this particular setting based upon the materials I have in front of me." In reference to the pending third application, the court ordered the City to provide Sunnybrook with the civil engineer's complete written comments by May 7, 2019.

---

[16]The City never called this motion for hearing.
[17]The City never called this motion for hearing.

16

¶ 47     On May 7, 2019, consistent with the April 29, 2019, order entered by the circuit court, the City's consultants provided final comments following a review of the third application. With regard to the proposed clubhouse/administration building, the building plans did not comply with the Alton Code. However, on May 10, 2019, consistent with the April 29, 2019, order, counsel for Sunnybrook delivered additional revised building plans to counsel for the Sunnybrook Project in response to the consultants' comments and feedback.

¶ 48     On May 31, 2019, the circuit court held a hearing on Sunnybrook's motion for summary judgment as to count III (writ of *mandamus*). At the outset of the hearing, the City stipulated that Sunnybrook's building plans "substantially complied" with the Alton Code, except for an issue with the fire suppression system. In addition, the City stated its disagreement with the court's previous order determining that Sunnybrook was not required to file a PDP. As it related to the fire suppression system, the City stated that the issue before the court was "whether or not the City is required to issue a building permit before [fire safety] plans are submitted to the City." Although the City acknowledged that its civil engineer specified, and Sunnybrook agreed, that this issue could be submitted as a "deferred submittal," the City denied receiving any request for a deferred submittal. In particular, the City claimed, pursuant to the International Building Code (IBC), section 107.3.4.1, that it had discretion to accept or reject a request for a deferred submittal.[18] Following argument by both parties on the issue, the court stated:

---

[18]The City adopted the 2015 IBC by incorporating it into The Alton City Code (Alton City Ordinance No. 7594 (approved Nov. 8, 2017)).

17

"[I]t occurs to me the City, for whatever reason, is just summarily not fulfilling its obligations with regard to these building permits."

Accordingly, on June 5, 2019, after determining there was no genuine issue of material fact relative to count III (*mandamus*) of Sunnybrook's amended complaint, the court issued a writ of *mandamus* on June 5, 2019. As such, the court ordered the City to issue a building permit to Sunnybrook on the third application by June 7, 2019. Sunnybrook was also allowed leave to submit to the City a deferred submittal for the fire suppression issue within 30 days of the court's order.

¶ 49    On June 18, 2019, after the City failed to issue a building permit to Sunnybrook on or by June 7, 2019, Sunnybrook filed a motion for rule to show cause.

¶ 50    On June 26, 2019, the City filed a timely motion to reconsider the circuit court's June 5, 2019, *mandamus* order. The next day, on June 27, 2019, the court granted Sunnybrook's motion for rule to show cause, finding the City in contempt of court for violating the court's June 5, 2019, order. The court entered an order directing the City to issue the building permit to Sunnybrook on the third application no later than June 28, 2019, or the court would impose sanctions of $500 per day, with the right to reserve the imposition of sanctions retroactively to June 8, 2019.

¶ 51    On July 26, 2019, the City filed notices of appeal from the circuit court's June 5, 2019, and June 27, 2019, orders. The City asserted that it had filed a motion for reconsideration on June 26, 2019, which automatically stayed the circuit court's June 5, 2019, order, which remained pending. As such, the City argued that it could not be found

18

in contempt of court on June 27, 2019, June 28, 2019, or at any other time during the pendency of the stay following the City's filing of the motion to reconsider.

¶ 52    On July 29, 2019, the City filed a petition for stay in the circuit court. On August 1, 2019, the circuit court denied the City's June 26, 2019, motion to reconsider, and the court noted the City's withdrawal of the July 29, 2019, petition for stay.

¶ 53    On August 6, 2019, the City filed a second petition for stay in the circuit court. Shortly thereafter, on August 12, 2019, the circuit court denied the City's petition for stay. On September 30, 2019, this court granted the City's motion to stay the court's June 5, 2019, *mandamus* and June 27, 2019, contempt orders pending resolution of this appeal.

¶ 54                                  II. Analysis

¶ 55                           A. Appellate Jurisdiction

¶ 56    Although neither party raises the issue, we begin by considering whether we have jurisdiction to decide this appeal. We have a duty to consider our jurisdiction *sua sponte* and dismiss if jurisdiction is lacking. See *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009) ("A reviewing court must ascertain its jurisdiction before proceeding in a cause of action, regardless of whether either party has raised the issue."). As such, we must first determine whether the City filed a timely appeal from the circuit court's June 5, 2019, *mandamus* order.

¶ 57    The City filed a timely motion to reconsider on June 26, 2019, within 30 days of the circuit court's June 5, 2019, order. See 735 ILCS 5/2-1202(c) (West 2018) ("Post-trial motions must be filed within 30 days after the entry of judgment *** or within any further time the court may allow within the 30 days or any extensions thereof."). One day

19

later, on June 27, 2019, while the City's motion to reconsider was pending, the court held the City in contempt of court for failure to comply with the court's *mandamus* order. On July 26, 2019, the City filed two notices of appeal, one from the court's June 5, 2019, and the other from the court's June 27, 2019, order. On August 1, 2019, the court denied the City's motion to reconsider.

¶ 58 Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017) provides that, "if a timely posttrial motion directed against the judgment is filed," the time for filing a notice of appeal is "within 30 days after the entry of the order disposing of the last pending postjudgment motion." If a party prematurely files a notice of appeal before the entry of the order disposing of the last pending postjudgment motion, Illinois Supreme Court Rule 303(a)(2) (eff. July 1, 2017) provides that the notice of appeal becomes effective when the order disposing of the last pending postjudgment motion is entered.

¶ 59 Accordingly, because the City's June 26, 2019, motion to reconsider was pending when the City filed a notice of appeal on July 26, 2019, from the June 5, 2019, *mandamus* order, the City's notice of appeal was premature. Despite this, the City's notice of appeal became effective on August 1, 2019, when the circuit court denied the City's motion to reconsider. Illinois Supreme Court Rule 303(a)(2) states that "there is no need to file a second notice of appeal where the postjudgment order simply denies the appellant's postjudgment motion." Ill. S. Ct. R. 303, Committee Comments (adopted Mar. 16, 2007). The City's premature notice of appeal filed on July 26, 2019, as it relates to the June 5, 2019, *mandamus* order became effective once the court disposed of its

20

postjudgment motion on August 1, 2019, and it confers jurisdiction on this court to review the June 5, 2019, *mandamus* order in its entirety.

¶ 60                               B. Open Motions

¶ 61    Before we reach the merits of this case, we must address the City's motion to sanction Sunnybrook and strike Sunnybrook's brief, which was taken with the case. In the City's motion, it argues that Sunnybrook's appellee brief, or portions contained within, should be stricken because they fail to comply with Illinois Supreme Court Rules 341 (eff. Nov. 1, 2017), 361 (eff. July 1, 2017), and 375 (eff. Feb. 1, 1994). The City contends that Sunnybrook's statement of facts contains irrelevant information and flagrant factual misrepresentations, legal conclusions, and self-serving commentary and argument. In addition, the City asserts that the remainder of Sunnybrook's appellee brief, including its argument section, is "similarly tainted with flagrant misrepresentations and counterarguments based upon the same." Accordingly, the City requests this court to impose sanctions upon Sunnybrook pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994). We decline to do so.

¶ 62    " '[T]he striking of an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when the alleged violations of procedural rules interfere with or preclude review.' " *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005) (quoting *Moomaw v. Mentor H/S, Inc.*, 313 Ill. App. 3d 1031, 1035 (2000)). Here, the statement of facts and the remainder of Sunnybrook's brief substantially comply with Rules 341 and

21

361.[19] The City's motion to strike is therefore denied. In addition, Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) allows the imposition of sanctions upon a party or a party's attorney if "the appeal *** is frivolous, *** not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Viewing this appeal as a whole, we cannot find that sanctions are warranted. The City's motion for sanctions is therefore denied. We now turn to the merits.

¶ 63                                    C. Standing

¶ 64     The City initially argues that Sunnybrook lacks standing and cannot plead or prove its *prima facie* case for judicial review because it was a not party to the first or second applications, submitted on July 31, 2018, and November 2, 2018, thus, the circuit court lacked subject matter jurisdiction to review the June 5, 2019, and June 27, 2019, orders. In particular, the City asserts that Sunnybrook is attempting to "bootstrap[ ] the party status" of other entities who were parties to the first and second applications. We disagree with the City.

¶ 65     In Illinois, it is well settled that lack of standing is an affirmative defense. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010) (citing *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 494 (1988)). "Although standing is determined by the allegations contained in the complaint, a plaintiff need not allege facts establishing standing." *Clarke v. Community Unit School District 303*, 2012 IL App (2d)

---

[19]We note that the City does not state the specific sections in violation of Illinois Supreme Court Rules 341 and 361.

110705, ¶ 36. Instead, a defendant bears the burden of pleading and proving a plaintiff's lack of standing. *Clarke*, 2012 IL App (2d) 110705, ¶ 36 (citing *Law Offices of Colleen M. McLaughlin v. First Star Financial Corp.*, 2011 IL App (1st) 101849, ¶ 16).

¶ 66   "[T]he standing doctrine is one of the devices by which courts attempt to cull their dockets so as to preserve for consideration only those disputes which are truly adversarial and capable of resolution by judicial decision." *Greer*, 122 Ill. 2d at 488. The doctrine "is designed to preclude persons who have no interest in a controversy from bringing suit" and "assures that issues are raised only by those parties with a real interest in the outcome of the controversy." *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999). "Standing is established by demonstrating some injury to a legally cognizable interest" and "requires that a party, in either an individual or a representative capacity, is entitled to have the court decide the merits of a dispute or a particular issue." *Clarke*, 2012 IL App (2d) 110705, ¶ 38 (citing *Powell v. Dean Foods Co.*, 2012 IL 111714, ¶¶ 35-36).

¶ 67   Here, the City is correct that Sunnybrook's name was not listed on the first two applications. We note that courts have concluded that "those having a beneficial interest in the subject matter and relief sought are the proper parties to sue." *Solomon v. City of Evanston*, 29 Ill. App. 3d 782, 788 (1975). In fact, "[t]his is true even though they do not have legal title or interest therein." *Solomon*, 29 Ill. App. 3d at 788 (citing *Huff v. Fulk*, 334 Ill. App. 33, 36 (1948)). The record, here, however, supports a finding that Sunnybrook has a real interest in the outcome of this controversy. First, the record supports that Sunnybrook owns an option with the right to purchase real estate, on which the Sunnybrook Project will be developed, from Keller Construction, Inc., pending the

23

approval of a building permit. This is evidenced by a Memorandum of Option, dated May 27, 2017, which details Keller Construction, Inc., as record owner of real estate for the Sunnybrook Project, via a quitclaim deed, and Hightower, manager acting on behalf of EBJJ, LLC, a partnering corporation with Sunnybrook, as optionee to purchase the parcel of land.

¶ 68    In addition, concluding that Sunnybrook has a real interest in the outcome of this controversy is further supported by the affidavits of third parties involved in the Sunnybrook Project. These affidavits include Morrissey of Morrissey Construction Company, signed January 28, 2019; Gerber of Keller Construction Inc., signed January 29, 2019; Hightower, signed February 4, 2019; and Goetz of Laborers Home Development Corporation, signed February 4, 2019. Specifically, Morrissey attested to drafting and filing the necessary building permits with the City, on Sunnybrook's behalf, for the Sunnybrook Project. Goetz attested that, upon completion, Laborers Home Development Corporation would share operational responsibilities with Sunnybrook. Moreover, as stated above, Hightower entered into an agreement with Keller Construction, Inc., to purchase real estate for the Sunnybrook Project, which was further supported by Gerber's signed affidavit. Moreover, we note that all four affidavits attached to Sunnybrook's March 20, 2019, motion for summary judgment were uncontradicted by counteraffidavit. As such, these affidavits stand as admitted. *Purtill*, 111 Ill. 2d at 241 ("[F]acts contained in an affidavit in support of a motion for summary judgment which are not contradicted by counteraffidavit are admitted and must be taken as true for purposes of the motion."). Based on the information provided by the above-

mentioned third parties, who also hold a real interest in the controversy, we cannot conclude that Sunnybrook has attempted to create standing by "bootstrapping the party status" of other entities who were parties to the first and second applications, as the City has claimed on appeal.

¶ 69    Additionally, due to extensive modifications requested by the City, the record demonstrates that Sunnybrook added $500,000 in construction and development costs to the Sunnybrook Project. Moreover, the Sunnybrook Project lost approximately $400,000 in federal funding after the City announced its opposition, and Sunnybrook was at risk of losing additional funding and possible tax credits if approval of the application was further delayed. Accordingly, we believe Sunnybrook has demonstrated some injury to a legally cognizable interest and has a real interest in the outcome of this controversy.[20] Accordingly, Sunnybrook has standing.

¶ 70                    D. Subject Matter Jurisdiction—*Mandamus* Action

¶ 71    The next issue before this court is whether the circuit court had subject matter jurisdiction to address Sunnybrook's request for *mandamus* relief in count III of the second amended complaint. We believe the court had jurisdiction to address the issue of *mandamus* in June 5, 2019, order.

¶ 72    Here, Sunnybrook filed its third application on November 16, 2018. Approximately three months later, on February 11, 2019, Sunnybrook filed its second

_____

[20]On November 13, 2019, the United States District Court for the Southern District Court denied the City's motion to dismiss, finding, *inter alia*, that Sunnybrook had standing under Article III, where an actual case or controversy existed, Sunnybrook had suffered redressable injury, and was a real party in interest, where it was determined that Sunnybrook could maintain an action for any conduct that occurred after its legal formation on May 30, 2018. See *Sunnybrook LP*, 425 F. Supp. 3d at 1043, 1045.

25

amended complaint, which included a third count requesting *mandamus* relief, compelling the City to (1) determine that the Sunnybrook Project had met all requisite requirements for the issuance of a building permit without the need for a PDP or special use permit or (2) issue Sunnybrook a building permit or a decision concerning Sunnybrook's third application. Thus, because the second amended complaint was filed before the City had rendered a decision on the third application, which would have made administrative review available to Sunnybrook, jurisdiction had attached in the circuit court. See *People ex rel. Boddington v. Robinson*, 34 Ill. App. 3d 913, 915 (1976) (finding that since a decision had not been made at the time of the filing of the petition, a writ of *mandamus* would have been proper to compel the administrative body to render a decision). In addition, because the City did not issue a final decision on the third application at any time during the pendency of the proceedings before the court, the court had jurisdiction over the matter. Thus, the court had jurisdiction to address count III of Sunnybrook's second amended complaint requesting *mandamus* relief.

¶ 73                    E. The Circuit Court's *Mandamus* and Contempt Orders

¶ 74    Next, we must address whether the circuit court's June 5, 2019, order was proper to grant Sunnybrook summary judgment and subsequently order the City to issue a building permit to Sunnybrook. Specifically, we must determine whether Sunnybrook was entitled to a writ of *mandamus* to compel the issuance of such permit.

¶ 75    *Mandamus* relief is an extraordinary remedy to compel the performance of a specific kind of behavior that is a ministerial duty of an officer and not an action that is discretionary. *Burnidge Brothers Almora Heights, Inc. v. Wiese*, 142 Ill. App. 3d 486,

26

490 (1986); see also *Beer Barn, Inc. v. Dillard*, 227 Ill. App. 3d 68, 69-70 (1992). "*Mandamus* will issue only where the plaintiff has fulfilled his burden [citation] to set forth *every* material fact needed to demonstrate that (1) he has a clear right to the relief requested, (2) there is a clear duty on the part of the defendant to act, and (3) clear authority exists in the defendant to comply with an order granting *mandamus* relief." (Emphasis in original.) *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 433-34 (2007).

¶ 76    Since *mandamus* commands the official to whom it is directed to perform some specific duty which plaintiff is legally entitled to have performed and which the official has failed to perform, it follows that where performance of a duty or act involves the exercise of judgment or discretion, the officer's action is not ordinarily subject to review or control by *mandamus*. *People ex rel. Rappaport v. Drazek*, 30 Ill. App. 3d 310, 332 (1975). Thus, *mandamus* will be improper where "its effect is 'to substitute the court's judgment or discretion for that of the body which is commanded to act.' " *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 229 (1999) (quoting *Chicago Ass'n of Commerce & Industry v. Regional Transportation Authority*, 86 Ill. 2d 179, 185 (1981)). "Where the plaintiff seeks issuance of a permit, the plaintiff must show complete compliance with ordinances before the writ will issue." *Kramer v. City of Chicago*, 58 Ill. App. 3d 592, 599 (1978) (citing *Solomon v. City of Evanston*, 29 Ill. App. 3d 782, 790 (1975) ("Anything less than strict and complete compliance with all necessary and applicable provisions must result in denial of the writ."); see also *People ex rel. Citizens Bank & Trust Co. v. Ward*, 39 Ill. App. 2d 20 (1963)).

27

¶ 77 In the instant case, we cannot conclude that the circuit court's June 5, 2019, *mandamus* order directing the City to issue Sunnybrook a permit was proper. First, Sunnybrook failed to establish a clear right to a building permit. Specifically, Sunnybrook failed to show that it had *fully* complied with all applicable ordinances at the time of the hearing on May 31, 2019. Although the record confirms that Sunnybrook's civil engineering plans were designed in accordance with civil engineering practice standards and that the City had stipulated that Sunnybrook's building plans, as of May 10, 2019, "substantially compl[ied]" with the Alton Code, there was not complete compliance with the fire suppression system ordinances at the time of the hearing. Consequently, Sunnybrook had not established a clear right to the building permit at the time the court entered the *mandamus* order requiring the City to issue the permit.

¶ 78 Second, Sunnybrook failed to establish that the City had a clear duty to issue the building permit because it had substantially complied with the Alton Code. At the hearing on May 31, 2019, the City denied receiving any request for a deferred submittal from Sunnybrook pursuant to section 107.3.4.1 of the IBC. Although the court allowed Sunnybrook leave to request a deferred submittal for the fire suppression system following the hearing, we note that the City had discretion to accept or reject a request for a deferred submittal (the City adopted the 2015 IBC by incorporating it into The Alton City Code (Alton City Ordinance No. 7594 (approved Nov. 8, 2017))). Pursuant to section 107.3.4.1 of the IBC, "[d]eferral of any submittal items shall have the prior approval of the *building official*." (Emphasis in original.) As a result, the third application was not merely waiting on the final ministerial approval, but the discretionary acts of the

building official to approve or reject the request for a deferred submittal regarding the fire suppression system issue. See *Burnidge Brothers Almora Heights, Inc.*, 142 Ill. App. 3d at 490 ("*Mandamus* is an extraordinary remedy to compel the performance of ministerial duties."). Because Sunnybrook lacked a clear right to the permit and the court substituted its discretion for that of the City by compelling the City to issue Sunnybrook a building permit, the court's writ of *mandamus* was improper.

¶ 79    Accordingly, an appropriate remedy would have been for the circuit court to compel the City to make a final decision on Sunnybrook's third application. In the event the City had reached a final decision, the court would have been required to dismiss Sunnybrook's suit to then allow Sunnybrook the opportunity to proceed under the Administrative Review Law or common law principles, depending on the applicable provision in the Alton Code.

¶ 80    Lastly, having determined that the circuit court had subject matter jurisdiction to address count III of the second amended complaint, we cannot conclude that the court's June 27, 2019, civil contempt order is void. See *People v. Huntley*, 144 Ill. App. 3d 64, 68 (1986) (an order is considered void if the trial court did not have jurisdiction over the parties or the subject matter or if it did not have power to enter the order). In addition, consistent with our district's order in *Southern Illinois Medical Business Associates v. Camillo*, 208 Ill. App. 3d 354, 367 (1991), we conclude that a civil contempt order must be obeyed until such time as it is set aside by a reviewing court or the issuing court. See also *Busey Bank v. Salyards*, 304 Ill. App. 3d 214, 217 (1999) (citing *People v. Graves*, 74 Ill. 2d 279, 284-85 (1979), and *Schallau v. City of Northlake*, 82 Ill. App. 3d 456, 467

29

(1979)). Therefore, vacating the circuit court's *mandamus* orders by this court does not cause the contempt order to fail.

¶ 81                                    III. Conclusion

¶ 82     For the reasons stated, we vacate the circuit court's June 5, 2019, *mandamus* order and affirm the court's June 27, 2019, contempt order.


¶ 83     Affirmed in part and vacated in part.